IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY, an Ohio Corporation, <br><br> Plaintiff, <br><br> v. <br><br> VEI SOLUTIONS, INC., an Illinois Corporation, DFK DIRECT INVESTMENTS, LLC, an Illinois Limited Liability Company, DECISION TREE RESOURCES, INC., an Indiana Corporation, TRANQUILINO R. VENTURA, an individual, <br><br> Defendants. | Case No.: |

## NATIONWIDE MUTUAL INSURANCE COMPANY'S INDEMNITY COMPLAINT

Now comes Plaintiff, Nationwide Mutual Insurance Company ("Nationwide"), by and through its undersigned counsel, for its Indemnity Complaint ("Complaint") against Defendants, VEI Solutions, Inc., DFK Direct Investments, LLC, Decision Tree Resources, Inc., and Tranquilino R. Ventura (collectively referred to as "Defendants" or "Indemnitors"), alleges as follows:

### PARTIES

1. Nationwide is an insurance company incorporated in the State of Ohio with its principal place of business in Columbus, Ohio.

2. Upon information and belief, Defendant, VEI Solutions, Inc. ("VEI") is an Illinois corporation with its principal place of business at 1800 Howard St., Ste. A, Elk Grove Village,

1

Illinois 60007, and can be served care of its registered agent, Tranquilino R. Ventura at 1800 Howard St., Ste. A, Elk Grove Village, Illinois 60007.

3. Upon information and belief, Defendant, DFK Direct Investments, LLC ("DFK") is an Illinois limited liability company with its principal place of business at 1720 W. Division St., Ste. 72, Chicago, Illinois 60622. Upon information and belief, Matthew Muckerheide is the sole member of DFK and is a citizen of and resides in the State of Illinois. DFK can be served care of its registered agent, Nicole L. Simmons, 1720 W. Division St., Chicago, Illinois 60622.

4. Upon information and belief, Defendant, Decision Tree Resources, Inc. ("DTR") is an Indiana corporation with its principal place of business at 304 W. Kirkwood Avenue, Ste. 100, Bloomington, Indiana 47404, and can be served care of its registered agent, Lori Thomas at 304 W. Kirkwood Avenue, Ste. 100, Bloomington, Indiana 47404.

5. Upon information and belief, Defendant, Tranquilino R. Ventura ("Ventura"), an individual, is a citizen of and is residing in the State of Illinois and can be served at 1225 W. Morse Avenue, Apt. 406, Chicago, Illinois 60626.

## JURISDICTION AND VENUE

6. This court has jurisdiction over this cause under 28 U.S.C. § 1332(a)(1) in that the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.00, and it between citizens of different states.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district and the majority of the Defendants reside in this district.

**FACTS COMMON TO ALL COUNTS**

8. Nationwide is in the business of, among other things, providing surety bonds to contractors in connection with construction projects throughout the United States.

9. Ventura is the president of VEI which is in the business of, among other things, performing construction services for construction projects in the United States.

## I. THE INDEMNITY AGREEMENT EXECUTED BY THE INDEMNITORS

10. In reliance upon the Indemnitors' financial representations of having several millions of dollars in assets and in exchange for the Indemnitors executing an indemnity agreement, Nationwide extended $2.3 million dollars of surety credit to VEI.

11. On or about May 10, 2021 and May 11, 2021, VEI, through its representative, Ventura, DFK, through its managing member, Matthew Muckerheide, DTR, through its president, Todd Taranto, and Ventura, individually, executed a General Agreement of Indemnity (the "Indemnity Agreement') in favor of, among others, Nationwide. A true and correct redacted copy of the Indemnity Agreement is attached hereto as **Exhibit 1** and is incorporated herein by reference as if set forth fully herein.

12. As set forth in the Indemnity Agreement, an "Indemnitor" is defined as, among other things, "the undersigned persons or entities, individually and collectively . . .." *See* **Exhibit 1** at ¶ I(C).

13. On or about May 10, 2021, VEI, through the signature of its representative, Ventura, and Ventura, individually and through his own signature, executed the Indemnity Agreement, and Ventura's signatures on behalf of VEI and individually were witnessed by Kyle Blais. *See* **Exhibit 1** at Signatures, pp. 8-9 of 10.

3

14. On or about May 11, 2021, DFK, through the signature of its managing member, Matthew Muckerheide, executed the Indemnity Agreement, and Matthew Muckerheide's signature on behalf of DFK was witnessed by Nicole L. Simmons. *See* **Exhibit 1** at Signatures, p. 8 of 10.

15. On or about May 11, 2021, DTR, through the signature of its president, Todd Taranto, executed the Indemnity Agreement, and Todd Taranto's signature on behalf of DTR was witnessed by Brandie Catlin. *See* **Exhibit 1** at Signatures, p. 9 of 10.

16. Therefore, pursuant to the terms of the Indemnity Agreement, the Indemnitors as set forth in the Indemnity Agreement include VEI, DFK, DTR, and Ventura. *See generally*, **Exhibit 1**.

17. The Indemnity Agreement defines "Surety" as "Nationwide Mutual Insurance Company, any of its present or future direct or indirect parent companies, any of the respective present or future direct or indirect affiliates or subsidiaries of such companies and parent companies, and/or any of the aforementioned entities' successors or assigns, and/or any co-sureties, reinsurers or any other person or entity underwriting any Bond at Surety's request." *See* **Exhibit 1** at ¶ I(H).

18. The term "Bond" is defined in the Indemnity Agreement as meaning:

> [A]ny and all Bonds, undertakings, guarantees, contractual obligations, and writings or statements of prequalification or commitment, including Modifications thereof, which Surety has executed or procured, or for which Surety has an obligation as a result of an asset purchase, acquisition, merger or like transaction, issued for or on behalf of any one or more of Indemnitors (without regard to whether any such Indemnitors signed this Agreement), their respective present or future direct or indirect parent companies, subsidiaries and affiliates and all of their respective successors and assigns. For the purpose of this Agreement, "Modifications" shall include but not be limited to renewals, substitutions, riders, endorsements, reinstatements, replacements, increases or decreases in penal sum, continuations, and extensions.

*See* **Exhibit 1** at ¶ I(A).

19. Further, the Indemnity Agreement defines the term "Loss" as used therein as meaning:

> [A]ll demands, liabilities, losses, costs, unpaid premiums, damages and expenses of any kind or nature, including legal fees and expenses, or expenses incurred by Surety in relation to any claim or potential claim, whether or not such claim is defensible or lacks merit, court costs, pre- and post- judgment interest, technical, engineering, accountant, consultant, expert witness and/or other professional fees and expenses, including the cost of in-house professionals, which Surety incurs, or to which it may be exposed, in connection with any Bond or this Agreement, including but not limited to all loss and expense incurred by reason of: (i) Surety's having executed any Bond or any other instrument or any Modification thereof; (ii) Surety's making any investigation in connection with any Bond or Contract; (iii) Surety's prose-cuting [*sic*] or defending any action in connection with any Bond; (iv) Surety's obtaining or attempting to obtain the release of any Bond; (v) Surety's recovering or attempting to recover Property (as hereinafter defined) in connection with any Bond or this Agreement; (vi) Indemnitors' failure to perform or comply with any promise, covenant, or condition of this Agreement; (vii) Surety's enforcing by litigation or otherwise any of the provisions of this Agreement; and (viii) all interest accruing thereon at the maximum legal rate. Loss shall also include any and all amounts sufficient to discharge any claim made against Surety on any Bond and shall further include any premiums due on any Bond issued by Surety on behalf of the Principal.

*See* **Exhibit 1** at ¶ I(D).

20. The Indemnity Agreement provides that the Indemnitors, jointly and severally, agree to exonerate, indemnify, and save Nationwide harmless from any and all costs and expenses incurred by reason of having issued any bonds, as surety, on behalf of the Indemnitors and enforcing the terms of the Indemnity Agreement. In relevant part, the Indemnity Agreement states the following:

> IV. INDEMNIFICATION AND HOLD HARMLESS
>
> The Indemnitors hereby jointly and severally covenant, promise and agree to exonerate, indemnify and save harmless Surety from and against any

5

> and all Loss, irrespective of whether Surety has made any payment under any of its Bonds. Surety shall be entitled to immediate reimbursement for any and all Loss incurred by it in good faith and under the belief that it was liable for the sums and amounts so disbursed, or that it was expedient to make such payments. Indemnitors shall be obligated to indemnify and reimburse Surety for all Loss, irrespective of the fact that Indemnitors may have assumed, or offered to assume, the defense of Surety upon any claim. An itemized, sworn statement of Loss by an employee of Surety, or other evidence of payment, shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability. Indemnitors shall pay to Surety interest on all disbursements made by Surety at the maximum rate permitted by law, calculated from the date of each such disbursement.

*See* **Exhibit 1** at ¶ IV, Indemnification and Hold Harmless.

21. As such, pursuant to ¶ IV of the Indemnity Agreement, the Indemnitors agreed to exonerate and indemnify Nationwide, and hold Nationwide harmless from and against any and all liability, loss, and expense, including, among other things, any and all such expenses relating to any claims, liabilities, demands for payment, including legal and consultant fees and expenses as well as interest, which Nationwide may pay or incur by reason of having executed any bond at the request of the Indemnitors. *See* **Exhibit 1** at ¶ IV, Indemnification and Hold Harmless; *see also* **Exhibit 1** at ¶ I(D).

22. The Indemnitors also agreed that Nationwide is to be "entitled to immediate reimbursement for any and all Loss incurred by it . . .." *See* **Exhibit 1** at ¶ IV, Indemnification and Hold Harmless.

23. The Indemnitors further agreed to the following language in the Indemnity Agreement:

> V. COLLATERAL SECURITY
>
> Upon Surety's demand, the Indemnitors shall immediately deposit with Surety funds, as collateral, in an amount Surety deems necessary at the time of said demand to protect Surety from actual or anticipated Loss. Demand may be made, from time to time, and as soon as: (a) any claim is made against Surety in connection with any Bond; or (b) Surety

> determines that liability exists; or (c) Surety has a reasonable basis to believe that it may incur liability or Loss; or (d) in the event any Indemnitor diverts contract funds relating to any Bond in violation of paragraph XIV of this Agreement or applicable law; or (e) in the event Surety deems itself insecure, whether or not Surety has made any payment or established any reserve and whether or not it has received notice of, accepted or denied any claim in whole or in part. Surety shall have no duty to invest or pay interest on any such collateral deposit. Said collateral may be used by Surety in its sole discretion at any time without notice to the Indemnitors to accomplish the purposes of this Agreement. In the event Surety accepts collateral other than funds, Surety is authorized, without notice to Indemnitors; to manage, borrow against, sell, pledge, convey or dispose of said collateral by public or private sale and shall not incur any liability to Indemnitors or others for said actions. The Indemnitors shall be entitled to the return of any collateral or collateral proceeds which may remain upon delivery by Indemnitors of satisfactory evidence to Surety, in its sole discretion, that its liability under any and all Bonds has been released and discharged without Loss and Indemnitors have fully complied with this Agreement. The Indemnitors acknowledge and agree that their failure to im-mediately [*sic*] deposit with Surety any sums demanded under this section shall cause irreparable harm to Surety for which it has no adequate remedy at law. Indemnitors agree and shall stipulate in any legal proceeding that Surety is entitled to injunctive relief for specific performance of said col-lateral [*sic*] deposit obligation and do hereby expressly waive and relinquish any claims or defenses to the contrary. Indemnitors further agree that any order enforcing this provision of this Agreement shall operate as a judgment, lien and encumbrance on any property owned by the Indemnitors.

*See* **Exhibit 1** at ¶ V, Collateral Security.

24. Accordingly, the Indemnitors were to deposit, immediately upon demand, a sum of money at Nationwide's discretion to protect Nationwide from actual or anticipated loss on account of having issued bonds on behalf of the Indemnitors. *See* **Exhibit 1** at ¶ V, Collateral Security.

25. As part of the collateral security provision of the Indemnity Agreement, the Indemnitors acknowledged and agreed "that their failure to im-mediately [*sic*] deposit with Surety any sums demanded under this section ***shall cause irreparable harm to Surety*** for which it ***has no adequate remedy at law***. Indemnitors agree and shall stipulate in any legal proceedings

that Surety is entitled to injunctive relief for specific performance of said col-lateral [*sic*] deposit obligation and ***do hereby expressly waive and relinquish any claims or defenses to the contrary***." **Exhibit 1** at ¶ V, Collateral Security (emphasis added).

26. The Indemnity Agreement further provides the following paragraph setting forth Nationwide's right to information from the Indemnitors pertaining to the financial affairs or operations of the Indemnitors:

> XV. BOOKS, RECORDS & CREDIT REPORTS
>
> Indemnitors warrant and represent that any financial information furnished by any Indemnitor to Surety is true and accurate and acknowledge that Surety has and will continue to rely upon such information in executing any Bond. Indemnitors shall have a continuing obligation to provide current financial information to Surety until such time as all obligations of the Indemnitors hereunder have been discharged. Surety, at any time, shall have continuous and uninterrupted access to the books, records, accounts and non-consumer and consumer credit reports of the Indemnitors and to all matters and information concerning any Bond(s) or instrument(s) executed by Surety and the financial condition, credit worthiness and assets of any Indemnitor until the liability of Surety under each and every Bond or other instrument executed by it and each and every obligation of the Indemnitors under this Agreement is terminated and discharged to the satisfaction of Surety. Banks, depositories, consumer credit reporting agencies, material-men [*sic*], supply houses, obligees on the Bonds and all other persons and organizations are hereby authorized to furnish Surety, at its request, any information (including copies thereof) requested including, but not limited to, consumer credit reports of any individual Indemnitor, the status of work under contracts being performed by an Indemnitor, the condition of the performance of such contracts and payments of such ac-counts [*sic*]. Regarding consumer credit reports, each Indemnitor agrees that a photocopy of this Agreement shall constitute a written request of the Indemnitor which the Surety may present to a Consumer Credit Reporting Agency as proof of Surety's authority to obtain a Consumer Report as defined under the Fair Credit Reporting Act.

*See* **Exhibit 1** at ¶ XV, Books, Records & Credit Reports.

## II. THE BONDS AND BOND CLAIMS

27. At the request of VEI, Nationwide, as surety and in reliance upon the Indemnity Agreement and assets of the Indemnitors, provided surety credit in the form of payment and performance bonds on behalf of VEI, as principal, and in favor of various private bodies, as obligees. The Bonds secured the obligations of VEI to perform construction work required by contracts with the private bodies and to pay for labor and materials required for the completion of these contracts.

28. Specifically, Nationwide issued the following bonds on behalf of VEI and in favor of the obligees identified below:

| Performance & Payment Bond Number | Principal | Obligee(s) | Project Name | Bond Amount |
|---|---|---|---|---|
| 7901050720 | VEI Solutions, Inc. | Power Construction Company, LLC; | 1454 West Randolph | $1,452,269.00 |
| 7901050721 | VEI Solutions, Inc. | Walsh Construction Company II, LLC | 932 West Randolph | $908,000.00 |

**TOTAL PENAL SUM OF ALL ISSUED BONDS:   $ 2,360,269.00**

Performance and Payment Bond Number 7901050720 shall be hereinafter referred to as the "1454 Randolph Bond." The 1454 West Randolph Project shall be hereinafter referred to as the "1454 Randolph Project." Performance and Payment Bond Number 7901050721 shall be hereinafter referred to as the "932 Randolph Bond." The 932 West Randolph Project shall be hereinafter referred to as the "932 Randolph Project." The 1454 Randolph Bond and 932 Randolph Bond, shall be hereinafter referred to collectively, as the "Bonds." The 1454 Randolph Project and 932 Randolph Project, shall be hereinafter referred to collectively, as the "Projects."

9

29. In late 2021 and early 2022, Nationwide began receiving claims on the Bonds relating to the Projects including performance bond claims from the Obligees and claims from VEI's vendors asserting they were owed money from VEI.

30. Regarding the 1454 Randolph Project and the 1454 Randolph Bond, Nationwide has received, as of the time of this filing, a performance bond claim from the 1454 Randolph Bond Obligee, Power Construction Company, LLC, and payment bond claims from VEI's vendors on the 1454 Randolph Project.

31. Nationwide has a reasonable basis to believe it will receive additional payment bond claims on the 1454 Randolph Bond from VEI's vendors on the 1454 Randolph Project.

32. As of March 17, 2022, Nationwide estimates a total potential net exposure under the 1454 Randolph Bond of $1,322,812.26.

33. Regarding the 932 Randolph Project and the 932 Randolph Bond, Nationwide has received, as of the time of this filing, a performance bond claim from the 932 Randolph Bond Obligee, Walsh Construction Company II, LLC, and payment bond claims from VEI's vendors on the 932 Randolph Project.

34. Nationwide has a reasonable basis to believe it will receive additional payment bond claims on the 932 Randolph Bond from VEI's vendors on the 932 Randolph Project.

35. As of March 17, 2022, Nationwide estimates a total potential net exposure under the 932 Randolph Bond of $261,497.35.

36. Specifically, the following chart identifies vendors of VEI on the Projects to which Nationwide has already received a payment bond claim against the Bonds or to which it has a reasonable basis to believe it may incur liability or loss on the Bonds, as well as the amount of such asserted or potential payment claims against the Bonds:

| Bond No. | Project | Vendors (Claim Received or Anticipated Claim) | Claim Amount |
|---|---|---|---|
| 7901050720 | 1454 Randolph | Allstate Metal Fabricators (Claim Received) | $21,541.60 |
| 7901050720 | 1454 Randolph | Americlad (Claim Received) | $80,248.00 |
| 7901050720 | 1454 Randolph | CR Laurence (Anticipated Claim) | $931.70 |
| 7901050720 | 1454 Randolph | Designed Equipment Corp. (Claim Received) | $69,889.00 |
| 7901050720 | 1454 Randolph | HDS White Cap (Anticipated Claim) | $1,081.84 |
| 7901050720 | 1454 Randolph | Mutual Sales Corp. (Anticipated Claim) | $664.50 |
| 7901050720 | 1454 Randolph | Petersen Aluminum (Claim Received) | $55,550.37 |
| 7901050720 | 1454 Randolph | Pro Fastening Systems (Anticipated Claim) | $182.75 |
| 7901050720 | 1454 Randolph | Sealant Engineering (Anticipated Claim) | $2,975.97 |
| 7901050720 | 1454 Randolph | Stevenson Crane (Claim Received) | $4,514.25 |
| 7901050720 | 1454 Randolph | Total Quality Logistics (Anticipated Claim) | $1,250.00 |
| 7901050720 | 1454 Randolph | Uline Shipping Supplies (Anticipated Claim) | $89.62 |
| 7901050720 | 1454 Randolph | Ironworkers Local 63 (Claim Received) | $257,494.84 |
| 7901050720 | 1454 Randolph | General Insulation (Claim Received) | $10,327.82 |
| 7901050721 | 932 Randolph | Designed Equipment Corp. (Anticipated Claim) | $54.50 |
| 7901050721 | 932 Randolph | HDS White Cap (Anticipated Claim) | $1,319.97 |
| 7901050721 | 932 Randolph | Mapes Architectural Panels (Claim Received) | $4,851.00 |
| 7901050721 | 932 Randolph | MDF Sealants (Claim Received) | $13,942.00 |
| 7901050721 | 932 Randolph | NIC Solutions (Claim Received) | $72,873.53 |
| 7901050721 | 932 Randolph | Oldcastle BE – Chicago (Anticipated Claim) | $5,807.38 |
| 7901050721 | 932 Randolph | Sealant Engineering (Anticipated Claim) | $37.02 |
| 7901050721 | 932 Randolph | Stevenson Crane Service (Claim Received) | $10,247.38 |

| 7901050721 | 932 Randolph | Superior Metal Technologies (Anticipated Claim) | $4,723.84 |
| --- | --- | --- | --- |
| 7901050721 | 932 Randolph | Ironworkers Local 63 (Claim Received) | $32,476.40 |
| 7901050721 | 932 Randolph | Levelset (Claim Received) | $80,000.00 |
| 7901050721 | 932 Randolph | Levelset (Claim Received) | $98,183.80 |
| | | **TOTAL ESTIMATED PAYMENT LOSS EXPOSURE:** | **$831,259.08** |

37. Accordingly, as of March 17, 2022, Nationwide's estimated potential net exposure under the Bonds totals $1,584,309.61.

### III. INDEMNITORS' BREACH OF INDEMNITY AGREEMENT

38. On or about February 7, 2022, Nationwide sent a written correspondence to the Indemnitors demanding the posting of collateral and access to books and records pursuant to Nationwide's rights under the Indemnity Agreement (the "Demand Letter"). A true and correct copy of Nationwide's Demand Letter is attached hereto as **Exhibit 2**.

39. The Demand Letter was sent to each of the Indemnitors via first class mail to each of the Indemnitors' last known addresses.

40. In the Demand Letter, Nationwide requested that the Indemnitors post cash collateral with Nationwide in the amount of $1,570,000.00 no later than February 21, 2022 on account of VEI's defaults and the claims on the Bonds. *See*, **Exhibit 2**, at pp. 2-3.

41. In the Demand Letter, Nationwide further requested an inspection of the Indemnitors' books and records that would be sufficient for Nationwide to ascertain the Indemnitors' current financial information including, but not limited to, access to Indemnitors' accounts payable, accounts receivable, profit and loss and income statements, tax returns, and bank statements. *See* **Exhibit 2**, at p. 2.

42. As of March 17, 2022, the Indemnitors have failed and/or refused to provide any collateral security to cover part of the liability asserted against Nationwide relating to the Bonds in the amount of $1,570,000.00 requested by Nationwide in the Demand Letter.

43. As of March 17, 2022, the Indemnitors have failed and/or refused to provide the financial books and records requested by Nationwide in the Demand Letter.

44. As a result of the Indemnitors' failure to post collateral as requested by Nationwide in the Demand Letter, Nationwide is being forced to potentially incur uncollateralized losses and has no security to protect itself if the Indemnitors fail to indemnify Nationwide from its losses and/or from the Indemnitors potentially dissipating or transferring assets to avoid their obligations to indemnify, exonerate, and hold Nationwide harmless under the Indemnity Agreement.

45. As a result of the Indemnitors' failure to post collateral as requested by Nationwide in the Demand Letter, Nationwide is at risk of being an unsecured creditor of the Indemnitors in contravention of the Indemnity Agreement.

46. As a result of the Indemnitors' failure to comply with Nationwide's requests in the Demand Letter for complete access to financial books and records, Nationwide has no way of determining whether the Indemnitors have the necessary assets and/or funds to sufficiently hold Nationwide harmless on account of claims on the Bonds and/or losses arising therefrom.

47. As a result of the Indemnitors' failure to comply with Nationwide's request in the Demand Letter for complete access to financial books and records, Nationwide has no way of determining whether VEI and the other Indemnitors have improperly dissipated assets in contravention of the Indemnity Agreement to avoid their obligations to indemnify, exonerate, and hold Nationwide harmless.

48. Nationwide has discharged its obligations under the Bonds, has acted in conformity with the Indemnity Agreement, and has satisfied all conditions precedent to recovery in this action.

## COUNT I
### Breach of Contract

49. Nationwide adopts, realleges, and incorporates by reference its allegations set forth in paragraphs 1 through 48 of its Complaint, as though fully set forth herein this paragraph 49.

50. The Defendants are obligated to (a) indemnify Nationwide to and from all losses in connection with the Bonds and the costs and expenses incurred by Nationwide in enforcing the terms of the Indemnity Agreement, (b) to post collateral to cover Nationwide's demand, and (c) allow Nationwide free access to inspect Indemnitors' books and records.

51. Pursuant to the Indemnity Agreement, the Defendants agreed to, among other things, pay Nationwide, immediately upon demand, all loss, interest, costs, and expenses incurred by Nationwide by reason of having executed any bonds on behalf of the Indemnitors, or incurred by Nationwide on account of any default under the Indemnity Agreement by any of the Indemnitors. *See* **Exhibit 1** at ¶ IV, Indemnification and Hold Harmless.

52. Pursuant to the Indemnity Agreement, the Defendants agreed to, among other things, deposit with Nationwide, immediately upon demand, collateral security in an amount Nationwide deems necessary to protect Nationwide from actual or anticipated loss by reason of having executed any bonds on behalf of the Indemnitors. *See* **Exhibit 1** at ¶ V, Collateral Security.

53. Pursuant to the Indemnity Agreement, the Defendants agreed to, among other things, provide Nationwide free access to inspect the Indemnitors' books and records. *See* **Exhibit 1** at ¶ XV, Books, Records & Credit Reports.

54. Despite Nationwide's Demand Letter, the Defendants have breached the Indemnity Agreement between the parties by failing and refusing to indemnify and hold Nationwide harmless from claims on the Bonds, failing to post collateral in the amount of Nationwide's estimated contingent exposure on the Bonds, and failing to allow Nationwide free access to the Indemnitors' books and records.

55. Nationwide has been damaged by the Defendants' material breach of the Indemnity Agreement in the initial amount of $1,570,000.00, which represents claims made plus current fees incurred.

## PRAYER FOR RELIEF

WHEREFORE, Nationwide Mutual Insurance Company prays this Honorable Court:

(a) Enter Judgment against the Defendants, in the amount of Nationwide's actual costs and estimated loss to date, plus all costs and expenses, including attorneys' fees and interest, in the amount that Nationwide has incurred;

(b) Order the Defendants to indemnify and exonerate Nationwide for all liabilities, losses, and expenses incurred by Nationwide as a result of Nationwide having executed the Bonds;

(c) Order the Defendants to pay Nationwide's costs, including reasonable attorneys' and consulting fees incurred herein; and

(d) Grant such additional relief as this Court deems appropriate.

## COUNT II
### Exoneration and Quia Timet

56. Nationwide adopts, realleges, and incorporates by reference its allegations set forth in paragraphs 1 through 55 of its Complaint, as though fully set forth herein this paragraph 56.

57. Nationwide has demanded the Defendants indemnify and hold it harmless from the claims asserted on the Bonds and post collateral now in the amount of $1,570,000.00. The collateral Nationwide has demanded does not include future claims.

58. The Indemnitors owe Nationwide the duty of exoneration, requiring them to perform their obligations before Nationwide is called upon to perform its obligations under the Bonds. Additionally, the Indemnity Agreement requires the Indemnitors, including VEI, DFK, DRT, and Ventura, to place funds or other security with Nationwide immediately upon demand that are, among other things, sufficient to cover Nationwide's exposure under the Bonds. *See* **Exhibit 1** at ¶¶ IV-V.

59. Nationwide is entitled to a remedy known as *quia timet*. This remedy secures a surety from loss when it appears that the principal is reasonably likely to fail or refuse to perform or to protect the surety from loss.

60. The Defendants have failed and refused to meet their obligations under the Indemnity Agreement by failing to indemnify Nationwide from the pending claims on the Bonds and by failing to post or deposit with Nationwide collateral in any amount.

61. Nationwide is entitled to be reimbursed for the attorneys and consulting fees it has currently paid and to be fully collateralized by the Defendants for the collateral it has requested in order to discharge its obligations under the Bonds.

62. Nationwide lacks an adequate remedy at law to secure its right of exoneration from the Indemnitors and is without a plain, speedy remedy at law and will be irreparably and permanently injured unless this Court grants the equitable relief requested herein.

### PRAYER FOR RELIEF

WHEREFORE, Nationwide Mutual Insurance Company prays this Honorable Court:

(a) Order the Defendants to indemnify and exonerate Nationwide for all liabilities, losses, and expenses incurred by Nationwide as a result of Nationwide having executed the Bonds;

(b) Order the Defendants to pay Nationwide's costs, including reasonable attorneys' and consulting fees incurred herein; and

(c) Grant such additional relief as this Court deems appropriate.

### COUNT III
### Specific Performance of Indemnity Agreement

63. Nationwide adopts, realleges, and incorporates by reference its allegations set forth in paragraphs 1 through 62 of its Complaint, as though fully set forth herein this paragraph 63.

64. Nationwide has demanded that the Defendants indemnify and hold Nationwide harmless from any and all costs resulting from the Bonds issued for the Projects.

65. Nationwide has requested the Defendants post collateral for the use in discharging Nationwide's obligations under the Bonds.

66. The Defendants have failed to indemnify Nationwide, have not posted or deposited collateral with Nationwide, and have not provided Nationwide free access to the Indemnitors' books and records.

67. Nationwide lacks an adequate remedy at law and will suffer irreparable harm if the relief sought is not granted.

**PRAYER FOR RELIEF**

WHEREFORE, Nationwide Mutual Insurance Company prays this Honorable Court:

(a) Order the Defendants to indemnify and exonerate Nationwide for all liabilities, losses, and expenses incurred by Nationwide as a result of Nationwide having executed the Bonds;

(b) Order the Defendants to pay Nationwide's costs, including reasonable attorneys' and consulting fees incurred herein;

(c) Order the Defendants to provide Nationwide access to inspect the Indemnitors' books and records; and

(d) Grant such additional relief as this Court deems appropriate.

**COUNT IV**
**Preliminary Injunction**

68. Nationwide adopts, realleges, and incorporates by reference its allegations set forth in paragraphs 1 through 67 of its Complaint, as though fully set forth herein this paragraph 68.

69. By the express provisions of the Indemnity Agreement and by virtue of the equitable doctrines of exoneration and *quia timet*, Nationwide is entitled to have the Defendants place funds or other security with it immediately upon demand that are, among other things, sufficient to cover the above-described claims on the Bonds.

70. Unless preliminary injunctive relief is granted, Nationwide will not be adequately secured for its obligations prior to resolving the pending claims under the Bonds or incurring further expenses under the Bonds. Further, unless preliminary injunctive relief is granted, the Defendants are likely to sell, transfer, dispose, lien, secrete, or otherwise divert their assets from being used to discharge the Defendants' obligations to exonerate and indemnify Nationwide, all to Nationwide's irreparable harm.

71. The Indemnitors agreed to post collateral with Nationwide and the Indemnitors agreed, in part, that not posting collateral will cause Nationwide irreparable harm. Namely, the Indemnitors agreed as follows:

> …The Indemnitors acknowledge and agree that their failure to im-mediately [*sic*] deposit with Surety any sums demanded under this section shall cause irreparable harm to Surety for which it has no adequate remedy at law. Indemnitors agree and shall stipulate in any legal proceeding that Surety is entitled to injunctive relief for specific performance of said col-lateral [*sic*] deposit obligation and do hereby expressly waive and relinquish any claims or defenses to the contrary. Indemnitors further agree that any order enforcing this provision of this Agreement shall operate as a judgment, lien and encumbrance on any property owned by the Indemnitors.

*See* **Exhibit 1** at ¶ V, Collateral Security.

72. Nationwide has requested collateral from the Indemnitors.

73. As of the date of filing this Complaint, the Indemnitors have failed to post collateral with Nationwide.

## PRAYER FOR RELIEF

WHEREFORE, Nationwide Mutual Insurance Company prays this Honorable Court:

(a) Issue a Preliminary Injunction ordering the Defendants to place with Nationwide the initial amount of $1,570,000.00 of funds by money, property, or liens or security interests in property, and any additional amount as determined by Nationwide as security for its obligations under the Bonds;

(b) Enjoin and restrain Defendants from selling, transferring, or disposing or liening their assets and property, and further enjoining and restraining Defendants from allowing their assets and property to be liened, unless and until Nationwide shall receive the funds requested in paragraph (a) above;

(c) Grant a lien upon all assets and property, including realty, personalty owned by Defendants, and property in which the Defendants have an interest. Such lien shall secure Nationwide against any loss that it may sustain under the Bonds. Such lien shall remain in effect unless and until Nationwide shall receive the funds requested in paragraph (a) above;

19

(d) Require the Defendants to indemnify and exonerate Nationwide from all liabilities, losses, and expenses incurred by Nationwide as a result of Nationwide having executed the Bonds;

(e) Require the Defendants provide Nationwide access to the Indemnitors' books and records for inspection and copying pursuant to the terms of the Indemnity Agreement; and

(f) Grant such additional relief as this Court deems appropriate.

Dated:    March 18, 2022

                                          Respectfully submitted,

                                          */s/ John E. Sebastian*

John E. Sebastian
Brian C. Padove
WATT, TIEDER, HOFFAR & FITZGERALD, LLP
10 S. Wacker Dr., Suite 1100
Chicago, IL 60606
Tel: 312-219-6900
jsebastian@watttieder.com
bpadove@watttieder.com

Attorneys for Plaintiff
NATIONWIDE MUTUAL INSURANCE COMPANY