IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY, an Ohio Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>VEI SOLUTIONS, INC., an Illinois Corporation, DFK DIRECT INVESTMENTS, LLC, An Illinois Limited Liability Company, DECISION TREE RESOURCES, INC., an Indiana Corporation, TRANQUILINO R. VENTURA, an individual,<br><br>    Defendants. | Case No.: 1:22-cv-01450<br><br>*Honorable Ronald A. Guzman* |

**NATIONWIDE MUTUAL INSURANCE COMPANY'S
MEMORANDUM IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff, Nationwide Mutual Insurance Company ("Nationwide"), by and through its undersigned counsel, submits this Memorandum in Support of its Motion for Preliminary Injunction against Defendants, VEI Solutions, Inc. ("VEI"), DFK Direct Investments, LLC ("DFK"), Decision Tree Resources, Inc. ("DTR"), and Tranquilino R. Ventura ("Ventura") (collectively referred to as "Defendants" or "Indemnitors").

This matter involves a request for this Court to grant Nationwide injunctive relief due to the Indemnitors' breach of obligations under a General Agreement of Indemnity ("Indemnity Agreement"). Among the Indemnity Agreement's promises is the Indemnitors' agreement to deposit collateral security to exonerate and hold Nationwide harmless from any losses or potential losses Nationwide may incur by reason of issuing surety credit on behalf of VEI. Such a provision is common in indemnity agreements with sureties throughout the United States.

1

After Nationwide issued bonds on behalf of VEI and receiving claims against said bonds, Nationwide, pursuant to its unequivocal rights under the Indemnity Agreement, sent a written demand requesting the Indemnitors hold up their end of the bargain – deposit collateral with Nationwide. However, instead of complying with their contractual obligations, the Indemnitors have blatantly disregarded their duty to, *inter alia*, deposit collateral security with Nationwide. This flies in the face of equity, and given anticipated and actual losses incurred by Nationwide, Nationwide has been left with no choice but to request that this Court exercise its equitable power through granting of the extraordinary remedy of injunctive relief in Nationwide's favor.

I. **FACTUAL BACKGROUND**

   A. **THE INDEMNITY AGREEMENT**

Nationwide is a surety company that issues performance and payment bonds for selected contractors, but prior to issuing said bonds, Nationwide requires its bonded principals to agree to and execute an indemnity agreement. Here, on or about May 10, 2021 and May 11, 2021, the Indemnitors agreed to the terms of the Indemnity Agreement and executed the same. (A true and correct redacted copy of the Indemnity Agreement is attached as **Ex. 1.**).

As part of the Indemnity Agreement and in consideration for Nationwide issuing bonds on behalf of VEI, the Indemnitors agreed to indemnify Nationwide, stating:

> The Indemnitors hereby jointly and severally covenant, **promise and agree to exonerate, indemnify and save harmless Surety from and against any and all Loss**, irrespective of whether Surety has made any payment under any of its Bonds. Surety shall be entitled to **immediate reimbursement** for any and all Loss incurred by ii in good faith and under the belief that ii was liable for the sums and amounts so disbursed, or that it was expedient to make such payments. **Indemnitors shall be obligated to indemnify and reimburse Surety for all Loss**, irrespective of the fact that Indemnitors may have assumed, or offered to assume, the defense of Surety upon any claim. **An itemized, sworn statement of Loss by an employee of Surety, or other evidence of payment, shall be prima facie**

> **evidence of the propriety, amount and existence of Indemnitors' liability** . . ..

**Ex. 1** at ¶ IV (emphasis added). The term "Loss" is defined in the Indemnity Agreement to include, *inter alia*, demands, liabilities, costs, legal and consultant fees, and expenses in which the Surety incurs or may be exposed in connection with any bond or the Indemnity Agreement. **Ex. 1** at ¶ I(D). Likewise, the Indemnitors agreed to the following obligations:

> **Upon Surety's demand, the Indemnitors shall immediately deposit with Surety funds, as collateral, in an amount Surety deems necessary at the time of said demand to protect Surety from actual or anticipated Loss**. **Demand may be made, from time to time, and as soon as:** (a) any claim is made against Surety in connection with any Bond; . . . or (c) Surety has a reasonable basis to believe that it may incur liability or Loss; . . . or (e) in the event Surety deems itself insecure, whether or not Surety has made any payment or established any reserve and whether or not it has received notice of, accepted or denied any claim in whole or in part . . . The Indemnitors acknowledge and agree that **their failure to im-mediately [*sic*] deposit with Surety any sums demanded under this section shall cause irreparable harm to Surety for which it has no adequate remedy at law**. Indemnitors agree and shall stipulate in any legal proceeding that **Surety is entitled to injunctive relief for specific performance of said col-lateral [*sic*] deposit obligation and do hereby expressly waive and relinquish any claims or defenses to the contrary** . . ..

**Ex. 1** at ¶ V (emphasis added). Thus, the Indemnitors' and Nationwide's obligations and rights pursuant to the Indemnity Agreement are clear, unambiguous, and straightforward.

    B.   THE BONDS AND NATIONWIDE'S LOSSES AND EXPOSURE ON ACCOUNT OF VEI

Subsequent to execution of the Indemnity Agreement and in reliance upon the bargained-for promises therein, Nationwide issued payment and performance bonds on behalf of VEI, as principal, at the request of the Indemnitors. *See* Decl. of William Downing attached as **Ex. 2** at ¶¶ 5-6. Two notable bonds issued on behalf of VEI include Bond Number 7901050720 ("1454 Randolph Bond") for a project at 1454 West Randolph in Chicago, Illinois ("1454 Randolph Project") and Bond Number 7901050721 ("932 Randolph Bond") for a project at 932 West

3

Randolph in Chicago, Illinois ("932 Randolph Project")(1454 Randolph Bond and 932 Randolph Bond collectively, the "Bonds")(1454 Randolph Project and 932 Randolph Project collectively, the "Projects")(True and accurate copies of the 1454 Randolph Bond and 932 Randolph Bond are attached as **Ex. 3** and **Ex. 4**). Notably, Nationwide received claims on these Bonds claiming VEI failed to perform pursuant to the terms of its contracts for each of the Projects and that VEI failed to pay its vendors on the Projects (the "Claims"). *Id*. at ¶¶ 8-15.

For the 1454 Randolph Project, Nationwide has received a performance bond claim, payment bond claims pertaining to VEI's alleged failure to pay its vendors on the 1454 Randolph Project, and reasonably believes it may receive additional payment claims on the 1454 Randolph Bond. *Id*. at ¶¶ 9-10, 15. Nationwide estimates a potential net exposure relating to the 1454 Randolph Bond of $1,322,812.26. *Id*. at ¶ 11. Nationwide has also received a performance bond claim, payment bond claims pertaining to VEI's alleged failure to pay its vendors on the 932 Randolph Project, and reasonably believes it may receive additional payment claims on the 932 Randolph Bond. *Id*. at ¶¶ 12-15. Nationwide estimates a potential net exposure relating to the 932 Randolph Bond of $261,497.35. *Id*. at ¶ 14. Thus, as of March 17, 2022, Nationwide's estimated potential net exposure on the Bonds is in excess of $1,584,309.61. *Id*. at ¶ 16.

C. **NATIONWIDE'S DEMAND PURSUANT TO THE INDEMNITY AGREEMENT**

On account of the above, Nationwide sent a written demand to the Indemnitors demanding the posting of collateral security and access to the Indemnitors' books and records pursuant to Nationwide's clear rights under the Indemnity Agreement (the "Demand Letter"). **Ex. 2** at ¶ 18; *see also* a copy of Nationwide's Demand Letter attached hereto as **Ex. 5**. Specifically, the Demand Letter summarized the Indemnitors' obligations under the terms of the Indemnity

4

Agreement, demanded cash collateral in the amount of $1,570,000.00, and requested an inspection of the Indemnitors' books and records. *See generally* **Ex. 5**.

Notwithstanding Nationwide's rights to collateral security and access to the Indemnitors' books and records, the Indemnitors have refused to honor the Indemnity Agreement and have, in clear contravention to their obligations thereunder, (1) failed to deposit any collateral security whatsoever with Nationwide, and (2) failed to provide immediate access to their books and records. **Ex. 2** at ¶¶ 18-21. As a result, Nationwide remains uncollateralized for actual and anticipated losses on account of it issuing bonds on behalf of VEI – a situation in which it specifically bargained not to be in through the Indemnity Agreement. Therefore, Nationwide now brings the instant action in equity in order to enforce its rights and the Indemnitors' obligations under the clear and unambiguous language of the Indemnity Agreement.

## II.     ARGUMENT

Nationwide's Motion simply requests that this Court enforce the provisions of the Indemnity Agreement against the Indemnitors in favor of Nationwide, relief to which it is rightfully entitled. In order to obtain a preliminary injunction, Nationwide must establish (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010). Nationwide must satisfy each requirement as articulated and, because a preliminary injunction is "an extraordinary remedy," it "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22; *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). Nationwide meets all requirements necessary for the extraordinary remedy of injunctive relief, and thus, this Court should grant its Motion.

5

A. **NATIONWIDE HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS**

Nationwide's Motion is premised on the indisputable facts that the Indemnitors breached their contractual obligations under the Indemnity Agreement. As such, Nationwide is entitled to specific performance of the Indemnity Agreement.

**1. The Indemnitors are in Breach of their Contractual Obligations**

Preliminarily, Illinois substantive law applies to Nationwide's breach of contract claim, as a district court exercising diversity jurisdiction "applies the choice-of-law rules of the state in which the court sits." *Intercon Solutions, Inc. v. Basel Action Network*, 969 F.Supp.2d 1026, 1034 (N.D. Ill. 2013). Under Illinois law, indemnity agreements and surety bonds are contracts, and thus, the Court is to apply Illinois' choice-of-law rules for contract claims. *See generally Bituminous Cas. Co. v. Plano Molding Co.*, 33 N.E.3d 658, 660 (Ill. App. Ct. 2d Dist. 2015); *Solai & Cameron, Inc. v. Plainfield Community Consol. School Dist. No. 202*, 871 N.E.2d 944, 953 (Ill. App. Ct. 3d Dist. 2007). In this regard, 815 ILCS 665/10 provides that a choice of law provision executed in connection with a building or construction contract to be performed in Illinois making another state's laws apply is void and unenforceable, or in other words, Illinois law must apply to such contracts that relate to building or construction within the State of Illinois. *See* 815 ILCS 665/10; *see also Travelers Cas. & Sur. Co. of America v. Paderta*, No. 10 C 406, 2013 WL 3388739, at *4 (N.D. Ill. July 8, 2013). Here, the Indemnity Agreement was entered into for the purpose of inducing Nationwide into providing surety credit (payment and performance bonds) on behalf of VEI in order for VEI to enter into construction contracts in Illinois, in exchange for VEI and the other Indemnitors' obligations to, *inter alia*, provide collateral security to Nationwide in the event of loss arising out of the bonds. *See generally* **Ex. 1**. In fact, the Bonds incorporate the underlying construction contracts for the 1454 Randolph

6

Project and 932 Randolph Project located in Chicago, Illinois. *See* **Exs. 3 and 4**. Thus, notwithstanding any provisions in the Indemnity Agreement to the contrary, pursuant to 815 ILCS 665/10, Illinois substantive law applies to Nationwide's claims herein.

Under Illinois law, to prevail in an action for breach of contract, a plaintiff must establish (1) the existence of a valid and enforceable contract between the parties, (2) performance by the plaintiff, (3) breach of the contract by the defendant, and (4) a resulting injury to the plaintiff. *Pepper Const. Co. v. Palmolive Tower Condominiums, LLC*, 59 N.E.3d 41, 66 (Ill. App. Ct. 1st Dist. 2016). With that in mind, written indemnity agreements are subject to general contract law principals and are to be strictly construed. *Virginia Sur. Co., Inc. v. Northern Ins. Company of New York*, 866 N.E.2d 149, 153 (Ill. 2007); *Bituminous Cas. Co.*, 33 N.E.3d at 660 ("It is well settled that indemnity contracts are strictly construed . . . ."). As such, if the terms of an indemnity agreement are clear and unambiguous, a surety may validly seek to enforce its rights against all indemnitors to such an agreement pursuant to the contract. *See e.g., Mountbatten Sur. Co., Inc. v. Szabo Contracting, Inc.*, 812 N.E.2d 90 (Ill. App. Ct. 2d Dist. 2004).[1]

Here, the unambiguous and valid written Indemnity Agreement between Nationwide and the Indemnitors clearly demonstrates the Indemnitors' liability under the Indemnity Agreement. Notably, through their execution of the Indemnity Agreement, the Indemnitors specifically agreed that, immediately upon demand by Nationwide, the Indemnitors were to become obligated to deposit said funds demanded. **Ex. 1** at ¶¶ IV, V. The Indemnity Agreement further states that Nationwide shall have "continuous and uninterrupted access" to the Indemnitors' books and records "until such time as all obligations of the Indemnitors . . . have been discharged." *Id.* at ¶ XV. Accordingly, per the unambiguous terms of the Indemnity Agreement,

---

[1] *See also The Hanover Ins. Co. v. Clark*, No. 05-C-2162, 2006 WL 2375428 (N.D. Ill. Aug. 15, 2006).

the Indemnitors were to immediately deposit collateral security requested by Nationwide to protect Nationwide "from actual or anticipated Loss." *Id*. at ¶ V.

Nationwide estimates potential loss to be at least $1,570,000.00 under the Bonds. In accordance with the terms of the Indemnity Agreement, Nationwide sent the Demand Letter requesting a deposit of collateral security in the amount of $1,570,000.00. The Indemnitors' disregard of the Demand Letter and blatant failure to deposit the demanded collateral security (in any amount whatsoever) constitutes a material breach of the Indemnity Agreement, which per the terms of said agreement "shall cause irreparable harm" to Nationwide. **Ex. 1** at ¶ V.

Therefore, for this reason alone, Nationwide meets the likelihood of success on the merits element of its preliminary injunction request.

    2. **Nationwide is Entitled to Specific Performance of the Indemnity Agreement**

The Indemnitors also expressly agreed that Nationwide would be entitled to specific performance as a remedy should the Indemnitors fail to post the demanded collateral security. Specifically, the Indemnity Agreement provides that nationwide "is entitled to specific performance of said col-lateral [*sic*] deposit obligation." **Ex. 1** at ¶ V.

Under well-settled law throughout the United States, specific performance of a collateral security provision in an indemnity agreement is a recognized equitable remedy for sureties, such as Nationwide, to assure that sureties receive the security provision and remedy for which they bargained. *See, e.g.*, *Eakin v. Continental Illinois National Bank and Trust Company of Chicago*, 121 F.R.D. 363, 366 (N.D. Ill. 1988) (Specific performance of collateral security obligation was available to liquidator for surety that had yet to suffer any damages or make any payments under its bond.).[2]

---

[2] *See also Am. Ins. Co. v. Egerton*, 59 F.3d 165, 1995 WL 371452 at *5 (4th Cir. 1995) (affirming an order requiring an indemnitor to post $158,000 in collateral based upon the surety's **potential liability**

8

From there, in enforcing the terms of an indemnity agreement containing a promise to provide collateral security prior to an actual loss, courts look to the express language to determine what triggers the surety's right to demand collateral security and obtain specific performance of that obligation. *See, e.g., American Motorists Insurance Co. v. Pennsylvania Beads Corp.*, 983 F. Supp. 437, 440 (S.D.N.Y. 1997); *United Furnace Co.*, 876 F.2d at 299-300. In both *Pennsylvania Beads* and *United Furnace Co.*, the court analyzed an indemnity agreement providing that "[a]ny demand upon [Surety] by the [United States] shall be sufficient to conclude that a liability exists and [Principal] shall then place [Surety] with sufficient funds as collateral security to cover the liability." *Id*. Both courts considered whether the necessary triggering event had occurred, i.e., a demand under the principal's bond. *Id*. at 440; *United Furnace Co.*, 876 F. 2d at 301. Finding that the triggering event had taken place, the courts enforced the express terms of the agreements and granted summary judgment to the sureties on their claims for specific performance of the principal's collateral security obligation. *Id*.

In *United Fire Cas. Co. v. Coggeshall Constr. Co., Inc.*, No. 91-3159, 1991 WL 169147 (C.D. Ill. June 28, 1991), the Court upheld a temporary restraining order requiring indemnitors of a surety to post collateral to secure a surety, and in so doing, noted the doctrine of *quia timet* as applied by the Seventh Circuit. Specifically, the Seventh Circuit has recognized a court of

---

under the bond.); *Employers Ins. of Wausua v. Bond*, No. HAR-90-1139, 1991 WL 8431, at * 3 (D. Md. Jan. 25, 1991); *Safeco Ins. Co. of America v. Schwab*, 739 F.2d 431, 433 (9th Cir.1984); *Travelers Cas. & Sur. Co. of Am. v. Sw. Contracting, Inc.*, No. 4:05-CV-99-DJS, 2006 WL 27694, at *32 (E.D. Mo. Feb. 2, 2006); *United States Fidelity & Guaranty Co. v. Feibus,* 15 F.Supp.2d 579, 588 (M.D. Pa. 1998) (Surety entitled to specific performance of collateral security provision for "future losses and expenses."); *American Motorists Ins. Co. v. United Furnace Co.,* 876 F.2d 293, 301-02 (2nd Cir. 1989) (Surety entitled to summary judgment for collateral security under the terms of indemnity agreement.); *United Bonding Insurance Co. v. Stein,* 273 F.Supp. 929, 929-30 (E.D. Pa. 1967); *See also United States Fidelity and Guaranty Ins. Co v Cler Constr. Serv.'s, Inc.*, 2003 WL 1873926 (N.D. Ill., April 11, 2003)(Court grants surety's motion for preliminary junction and orders indemnitors to post collateral), *Travelers Cas. & Sur. Co. v. Craig Ockerlund*, 2004 WL 1794915 (N.D. Ill. Aug. 6, 2004); *Hanover Ins. Grp. v. Singles Roofing Co., Inc.*, 2012 WL 2368328 (N.D. Ill. June 21, 2012)(Granting surety injunctive relief and ordering indemnitors to post collateral and provide access to indemnitors' books and records).

equity's power to seize a principal's funds on account of a debt owed to a surety. *Western Casualty & Surety Company v. Biggs*, 217 F.2d 163, 165 (7th Cir. 1954). As such, the *Coggeshall* court affirmed the enforcement of a collateral posting provision finding that a surety is entitled to specific performance of such a provision. *Coggeshall*, 1991 WL 169147, at *2.

The facts of this case are analogous to the facts of the cases discussed above. Based upon the Indemnitors' actions (or lack thereof), Nationwide faces imminent liability under the Bonds. As a consequence, and in accordance with the unambiguous terms of the Indemnity Agreement, Nationwide has demanded that the Indemnitors provide Nationwide with collateral security in an amount necessary to discharge Nationwide's obligations under the Bonds and guard against potential future loss. The Indemnitors have simply failed and refused to comply with this demand (and their obligations under the Indemnity Agreement).

Under the holdings in *Pennsylvania Beads*, *United Furnace Co.*, *United Fire Cas. Co.*, and *Cler Const. Services, Inc., Ockerlund,* and *Singles Roofing*, Nationwide is entitled to specific performance of the collateral security obligations of the Indemnity Agreement by the Indemnitors. The rationale for this conclusion is apparent from the cases that have addressed this very issue. It is a general principle of equity that, "before paying a debt[,] a surety may call upon the principal to exonerate him by discharging it; he is not obliged to make inroads into his own resources when the loss must in the end fall upon the principal." *Morley Construction Co. v. Maryland Casualty Co.,* 90 F.2d 976, 977 (8th Cir. 1937). Moreover, courts addressing this problem have noted, "[i]f a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced." *Feibus*, 15 F. Supp. 2d at 588; *see also Marine Midland Trust Co. v. Alleghany Corp.*, 28 F.Supp. 680, 683 (S.D.N.Y. 1939). Without specific enforcement of the collateral security obligation, the surety would be relegated

10

to an action for damages and would share his principal's property with other unsecured creditors, contrary to the terms of its bargain with its principal. *Marine Midland*, 28 F.Supp. at 683. Therefore, in order to protect the surety's bargain, courts will grant it relief in the form of specific performance of the collateral security obligation. *Feibus*, 15 F.Supp.2d at 588.

Nationwide has satisfied all conditions precedent to its right to demand collateral security from the Indemnitors as defined by the Indemnity Agreement. Moreover, Nationwide has made the demand upon the Indemnitors, and the Indemnitors have failed to honor their contractual duty to provide such security. Thus, for this reason as well and in light of the express terms of the Indemnity Agreement and Nationwide's satisfaction of all conditions precedent to the Indemnitors' joint and several duties to act, Nationwide has a high probability of success in proving its claim and is entitled to specific performance of the Indemnity Agreement.

B. **NATIONWIDE IS LIKELY TO SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY INJUNCTION**

Pursuant to the Indemnity Agreement, Nationwide holds a bargained-for right to collateral security and access to the Indemnitors' books and records. The failure to obtain the collateral security and gain access to books and records will result in irreparable harm. Similar to the specific performance provision's enforceability, courts throughout the United States have recognized that a surety, such as Nationwide, will suffer irreparable harm when indemnitors, such as the Indemnitors here, fail to post collateral security in accordance with the express terms of their indemnity agreements with sureties.).[3]

---

[3] *See, e.g.*, *United Furnace Co.*, 876 F.2d at 301 ("Having bargained for collateral security and having failed to received it, a surety's injury is real and immediate."); *BRC Uluslararasi Taahut ve Ticaret A.S. v. Lexon Ins. Co.*, No. 8:19-cv-00771-PX, 2020 WL 6801933, at *14 (D. Md. Nov. 19, 2020)(risk of indemnitors' non-payment was the very risk the collateral provisions in indemnity agreements were meant to obviate, and thus, because money damages cannot capture the harm arising from the surety bearing the risk of non-payment and the loss of its bargained-for secured position, injunctive relief was proper); *Great Am. Ins. Co. v. SRS, Inc.*, No. 3:11-cv-00970, 2011 WL 6754072 at *8 (M.D. Tenn. Dec.

In relevant part, the *Ockerlund* and *Singles Roofing* courts found that a surety would suffer irreparable harm if injunctive relief were not granted in favor of the sureties when seeking to enforce an indemnity agreement's collateral security provision. *Ockerlund*, 2004 WL 1794915; *Singles Roofing*, 2012 WL 2368328. In *Ockerlund*, the court reasoned that holding money damages without "according [the surety] relief of specific performance pursuant to the . . . indemnity agreement is not an adequate remedy and would irreparably harm [the surety] by depriving it of prejudgment relief to which it is contractually entitled." *Ockerlund*, at *5. Thus, the court held that "[g]iven the emphasis in the case law and in the Restatement on inequity of impairing a surety's expectation and requiring it to perform a primary obligor's duty, [the court] believe[s] that [surety] has shown it had an inadequate remedy at law and that it would suffer irreparable harm." *Id*. Likewise, in *Singles Roofing*, the court found the surety's argument that it would suffer irreparable harm through the loss of its contractual rights to be indemnified for claims under the bonds, including the right to immediate posting of collateral security sufficient to indemnify the surety for claims asserted against it, met the surety's burden of showing it would suffer irreparable harm. *Singles Roofing*, at *12. In sum, there are several reasons why a surety suffers immediate and irreparable harm when its indemnitors fail to post collateral.

First, absent enforcement of the collateral security obligation, a surety that bargained for this security would be unfairly relegated to the same status as any other unsecured creditor. *See Int'l Fid. Ins. Co. v. Anchor Entl. Inc.*, No. 07-04750, 2008 WL 1931004, at *7 (E.D. Pa. May 1, 2008)("To protect [the surety] from becoming a general creditor, the grant of specific performance to enforce the collateral security provision is warranted."). Second, a surety,

---

23, 2011) (sureties suffer irreparable harm if denied receipt of collateral); *Liberty Mut. Ins. Co. v. Aventura Ang'g & Constr. Corp.*, 534 F.Supp.2d 1290, 1321 (S.D. Fla. 2008) ("courts have found that a surety's loss of its right to collateralization cannot be adequately remedied through monetary damages.").

possessing a right to collateral security, has negotiated an arrangement where the indemnitors bear the primary responsibility for losses in the event of potential bond liability. *See United Furnace Co.*, 876 F.2d at 301. The Indemnitors' failure to provide the bargained-for security makes Nationwide's injury "real and immediate." *Id*. at 302; *Ockerlund*, at *5 (surety will suffer irreparable harm without specific performance); RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY § 21 cmts. i, j, k (1996)) ("even if a surety's loss is monetary and only temporary, that it must assume a primary obligor's obligation at all is a harm for which there is no adequate remedy at law"). Third, as collateral security protects the surety from loss before and while it pays claims, the surety would forever lose its ability to assert its right to collateral if not specifically enforced. *Indus. Com. Structures, Inc.*, No. 6:12-cv-1294-Orl-28DAB, 2012 WL 4792906 at *3 (M.D. Fla. Oct. 9, 2012) (noting that nothing can remedy a surety's lack of collateralization after the fact). For this reason, damage resulting from the failure to post collateral security is not ascertainable, and thus, any legal remedy would be inadequate.[4]

The Indemnitors' disregard of contractual obligations has jeopardized integral rights afforded to Nationwide under the Indemnity Agreement causing Nationwide irreparable harm. Nationwide is presently facing substantial, uncollateralized exposure arising from the Bonds, and Nationwide specifically bargained for the right to collateral security when faced with such a situation. As such, Nationwide will be irreparably harmed absent a preliminary injunction.

C. **THE INJUNCTION WILL NOT SUBSTANTIALLY INJURE THE INDEMNITORS AND THE BALANCE OF EQUITIES STRONGLY WEIGHS IN NATIONWIDE'S FAVOR**

---

[4] *See Developers Sur. and Indem. Co. v. Hansel Innovations, Inc.*, No. 8:14-cv-425-T-23TBM, 2014 WL 2968138, at *6 (M.D. Fla. July 1, 2014) (noting that surety's loss of its right to collateralization cannot be adequately remedied through monetary damages); *U.S. Fid. & Guar. Co. v. J. United Elec. Contracting Corp.*, 62 F. Supp. 2d 915, 926 (E.D.N.Y. 1999) (sureties demonstrate a legal of adequate legal remedy for breach of security provision, and since obligations are continuing, the total loss is not ascertainable.)

Notably, without the remedy of injunctive relief, Nationwide's rights under the Indemnity Agreement will be stripped and Nationwide will be forever prejudiced. In distinct contrast, the injunctive relief Nationwide seeks merely requires the Indemnitors to comply with the very terms of the Indemnity Agreement they agreed to in exchange for Nationwide issuing the Bonds. Thus, Nationwide is simply trying to enforce its contractual rights to collateral security and an inspection of books and records – obligations the Indemnitors expressly agreed to.

The lack of harm resulting from an order requiring performance of contractual obligations is particularly evidenced in the case of indemnitors failing to post collateral security. For example, the *Ockerlund* court observed the following when granting a surety injunctive relief:

> The balance of harms . . . tips in favor of plaintiff. If the injunction is denied, plaintiff will be forced to use its own funds to defend and pay claims despite defendants' promises to the contrary . . . This is a serious harm . . . If the injunction is granted, defendants will be required to perform as they contractually agreed to do.

*Ockerlund*, 2004 WL 1794915, at *5. The Indemnitors received their benefit when the Bonds were issued. Now, it is the time for Nationwide to receive its end of the bargain – the collateral to protect it from losses. *Great Am. Ins. Co.*, 2011 WL 6754072, at *10; *Lexon Ins. Co.*, 2020 WL 6801933, at *15 (absent an injunction, the surety would lose the benefit of its bargain, where the indemnitors, "face no 'comparable, cognizable injury because 'requiring a party to comply with its contractual obligations does not constitute harm'"). Without collateral, Nationwide will be forced to resolve claims without a reserve of collateral to resolve them. This is a substantially greater harm compared to the Indemnitors simply complying with the Indemnity Agreement.

### D. PUBLIC INTEREST SUPPORTS GRANTING OF NATIONWIDE'S MOTION

Nationwide cannot conceive of any public interest that would be served if the Indemnitors were permitted to escape their Indemnity Agreement obligations with impunity - such

14

circumstances would only undermine the predictability intended in commercial settings by the execution of contracts. Moreover, allowing parties to disregard their obligations in such clear circumstances as those present here can only promote contractual malfeasance in other settings.

The Indemnitors are sophisticated parties, voluntarily executed the Indemnity Agreement, and understood the terms thereof when they asked Nationwide to extend surety credit. In issuing the Bonds, Nationwide relied upon the Indemnitors' Indemnity Agreement promises. Failing, now, to enforce the bargained-for agreement's terms would directly "undermin[e] the legitimate business expectations not only of the parties here, but of all contracting parties." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ran*, 67 F.Supp.2d 764, 781 (E.D. Mich. 1999); *see also Anchor Entl. Inc.*, 2008 WL 1931004, at *7 ("a preliminary injunction furthers the public interest by recognizing and enforcing the plain language of a binding surety indemnification agreement.").

As a final matter, requiring parties to an indemnity agreement to honor their obligations encourages commercial sureties, including Nationwide, to continue issuing bonds for the construction industry. Sureties serve an important role in public construction projects; their bonds ensure that subcontractors and suppliers will be paid and that the contract work will be performed. *Anchor Entl. Inc.,* 2008 WL 1931004, at *7.[5] However, should indemnity agreements and collateral security provisions thereof not be enforced, sureties may cease providing such construction bonds on account of them being no longer economically practical – such a result would substantially hinder not only the construction industry, but the public at large.

Accordingly, for the above, reasons, enforcing the terms of the Indemnity Agreement against the Indemnitors is in line with public policy.

---

[5] S*ee also Lexon Ins. Co.*, 2020 WL 6801933, at *15 (The "Court recognizes that enforcement of contracts remains of critical importance against those who seek to "escape from their obligations . . . [and] [t]his is particularly so where the relief involves preservation of the "vital role" that sureties play in the construction industry in "providing 'financial strength and credit' to ensure that a contractor has the 'ability to perform its obligations.'").

### III. CONCLUSION

WHEREFORE, for the foregoing reasons, Nationwide respectfully requests this Honorable Court grant this Motion and enter the following preliminary relief:

(a) Issue an order to Defendants to Show Cause at the earliest possible date as to why the relief demanded herein should not be granted;

(b) Issue a Preliminary Injunction, which includes the following:

   (i) Requiring the Defendants to place with Nationwide the initial amount of **$1,570,000.00** of funds by money, property, or liens or security interests in property, and any additional amount as determined by Nationwide as security for its obligations under the Bonds;

   (ii) Enjoining and restraining Defendants from selling, transferring, or disposing or liening their assets and property, and further enjoining and restraining Defendants from allowing their assets and property to be liened, unless and until Nationwide shall receive the funds requested in paragraph (b)(i) above;

   (iii) Granting a lien upon all assets and property, including realty, personalty owned by Defendants, and property in which the Defendants have an interest. Such lien shall secure Nationwide against any loss that it may sustain under the Bonds. Such lien shall remain in effect unless and until Nationwide shall receive the funds requested in paragraph (b)(i) above;

   (iv) Requiring the Defendants to indemnify and exonerate Nationwide from all liabilities, losses, and expenses incurred by Nationwide as a result of Nationwide having executed the Bonds;

   (v) Requiring the Defendants provide Nationwide access to the Indemnitors' books and records for inspection and copying pursuant to the terms of the Indemnity Agreement;

(c) Order the Defendants to pay Nationwide's costs, including reasonable attorneys and consulting fees incurred herein; and

(d) For such other relief this Court deems appropriate.

Dated: March __21___, 2022

                                                   Respectfully submitted,

                                                 */s/ **John E. Sebastian***

                                                 John E. Sebastian
                                                 Brian C. Padove
                                                 WATT, TIEDER, HOFFAR & FITZGERALD, LLP
                                                 10 S. Wacker Dr., Suite 1100
                                                 Chicago, IL 60606
                                                 Tel: 312-219-6900
                                                 jsebastian@watttieder.com
                                                 bpadove@watttieder.com

                                                 Attorneys for Plaintiff
                                                 NATIONWIDE MUTUAL INSURANCE
                                                 COMPANY

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 21, 2022, I electronically filed the foregoing **Plaintiff, Nationwide Mutual Insurance Company's Memorandum in Support of its Motion for Preliminary Injunction** with the Clerk of the Court for the Northern District of Illinois using the Court's CM/ECF system, which shall send notifications of such filing to all counsel of record. Additionally, I hereby certify that on March 21, 2022, I provided the same document(s) to be served by process server to the defendants:

VEI Solutions, Inc.
c/o Tranquilino R. Ventura, R/A
1800 Howard Street, Suite A
Elk Grove Village, Illinois 60007

Decision Tree Resources, Inc.
c/o Lori Thomas
304 W. Kirkwood Avenue, Suite 100
Bloomington, Indiana 47404

DFK Direct Investments, LLC
c/o Nicole L. Simmons
1720 W. Division Street
Chicago, Illinois 60622

Tranquilino R. Ventiura
1225 W. Morse Avenue, Apt. 406
Chicago, Illinois 60626

 */s/ John E. Sebastian*
John E. Sebastian
WATT, TIEDER, HOFFAR & FITZGERALD, LLP
10 S. Wacker Dr., Suite 1100
Chicago, IL 60606
Tel: (312) 219-6900
jsebastian@watttieder.com