# EXHIBIT 1



# Nationwide Mutual Insurance Company
## GENERAL AGREEMENT OF INDEMNITY

**This is an important document that affects your responsibilities and obligations. Read this document carefully. If you have any questions or do not understand it fully, consult with your attorney before signing it.**

This General Agreement of Indemnity (this "Agreement") is made by each person, organization and other entity executing this Agreement, individually and for and on behalf of all other Indemnitors (as hereinafter defined) in favor of the Surety (as hereinafter defined) and any other entity who may act as surety, in connection with any Bond (as hereinafter defined).

WITNESSETH

WHEREAS, one or more of the Indemnitors, in connection with the performance of contracts and/or the transaction of business and/or the fulfillment of any obligations generally, whether solely in its own name or as a co-adventurer with others, has heretofore desired, been required or may, in the future desire or be required to give or procure certain contracts of suretyship, guaranty or indemnity or other writings obligatory in nature, including any continuation, extension, alteration, renewal or substitution thereof or may request Surety to refrain from canceling any Bonds; and

WHEREAS, Surety, at the request of one or more of the Indemnitors and because of the promises of the Indemnitors to execute this Agreement and the promises that are made by the Indemnitors in this Agreement, has executed or may in the future execute or procure the execution of one or more such Bonds on behalf of one or more of the Indemnitors.

NOW THEREFORE, in consideration of these premises, and the execution of any such Bond, whether executed before, simultaneously with or after the execution of this Agreement, the Indemnitors for themselves, their heirs, executors, administrators and successors, jointly and severally, agree with Surety as follows:

I. **DEFINITIONS**

   For purposes of this Agreement, the following Definitions apply, which Definitions shall be equally applicable to both the singular and plural forms of such terms:

   A. The term "Bond" shall mean any and all Bonds, undertakings, guarantees, contractual obligations, and writings or statements of prequalification or commitment, including Modifications thereof, which Surety has executed or procured, or for which Surety has an obligation as a result of an asset purchase, acquisition, merger or like transaction, issued for or on behalf of any one or more of Indemnitors (without regard to whether any such Indemnitors signed this Agreement), their respective present or future direct or indirect parent companies, subsidiaries and affiliates and all of their respective successors and assigns. For the purpose of this Agreement, "Modifications" shall include but not be limited to renewals, substitutions, riders, endorsements, reinstatements, replacements, increases or decreases in penal sum, continuations, and extensions.

   B. The term "Contract" shall mean any agreement of, or undertaking by, any Indemnitor, the performance of which is bonded by Surety and all Modifications thereof, whether made before or after the date of this Agreement, and all agreements between Indemnitors and Surety. This shall also include, without limitation, any contract or obligation, the performance of which is guaranteed or covered either in whole or in part under a Bond.

   C. The term "Indemnitor" shall mean the undersigned persons or entities, individually and collectively, and all of their existing or prospective heirs, personal representatives, executors, administrators, parent companies, purchasers, successors (through asset acquisition or otherwise), assigns, related entities, co-venturers, joint ventures, affiliates, subsidiaries, divisions, and marital communities along with any entity (whether partially or wholly owned and/or controlled) of whatever description and whenever formed or acquired in which any Indemnitor has ownership or beneficial interest. Indemnitor shall also include any Principal. The term "Indemnitor" shall also include all new Indemnitors added to this Agreement by rider, and all of their heirs, executors, administrators, successors and assigns, and any entity that obtains Bonds from Surety at the request of any of the aforementioned parties, or any combination of the above.

   D. The term "Loss" shall mean all demands, liabilities, losses, costs, unpaid premiums, damages and expenses of any kind or nature, including legal fees and expenses, or expenses incurred by Surety in relation to any claim or potential claim, whether or not such claim is defensible or lacks merit, court costs, pre- and post- judgment interest, technical, engineering, accountant, consultant, expert witness and/or other professional fees and expenses, including the cost of in-house professionals, which Surety incurs, or to which it may be exposed, in connection with any Bond or this Agreement, including but not limited to all loss and expense incurred by reason of: (i) Surety's having executed any Bond or any other instrument or any Modification thereof; (ii) Surety's making any investigation in connection with any Bond or Contract; (iii) Surety's prosecuting or defending any action in connection with any Bond; (iv) Surety's obtaining or attempting to obtain the release of any Bond; (v) Surety's recovering or attempting to recover Property (as hereinafter defined) in connection with any Bond or this Agreement; (vi) Indemnitors' failure to perform or comply with any promise, covenant, or condition of this Agreement; (vii) Surety's enforcing by litigation or otherwise any of the provisions of this Agreement; and (viii) all interest accruing thereon at the maximum legal rate. Loss shall also include any and all amounts sufficient to discharge any claim made against Surety on any Bond and shall further include any premiums due on any Bond issued by Surety on behalf of the Principal.

   E. The term "Obligee" shall mean any person or entity in whose favor a Bond has been issued, and that person's or entity's successors and assigns, to the extent permitted by the Bond or at law.

   F. The term "Principal" shall mean any person or entity in whose name a Bond is executed; and shall include any Indemnitor for which Surety has issued or shall issue any Bond.

   G. The term "Property" shall mean Indemnitors' rights, title and interest, whether now held or hereafter acquired in, or growing in any manner out of, or in any way related to: (i) any Contract or contract, bonded or non-bonded, in which any Indemnitor has an interest, including but not

Indemnitor's Initials _M M_   Indemnitor's Initials _JRV_   Indemnitor's Initials _____   Indemnitor's Initials _____   Indemnitor's Initials _____
Indemnitor's Initials _JJ_    Indemnitor's Initials _JRV_   Indemnitor's Initials _____   Indemnitor's Initials _____   Indemnitor's Initials _____

    limited to subcontracts let; (ii) any and all sums due or which may hereafter become due under any Contract or contract, bonded or non-bonded, in which any Indemnitor has an interest and all damage claims and proceeds related thereto; (iii) all rights arising under any surety Bonds or insurance policies; (iv) any and all accounts receivable, letters of credit, documents of title, bills of lading, warehouse receipts, machinery, plants, equipment, tools, materials, supplies, inventory, vehicles, hardware, software, machine tools, fixtures, office equipment, books records, designs, licenses, patents, intellectual property, as-builts, construction drawings and documents, and all electronically stored information; (v) any and all real property owned by the Indemnitors, including all fixtures (vi) any and all claims relating to or arising from any Contract or contract, bonded or non-bonded, in which any Indemnitor has an interest; and (vii) all other personal property now owned or hereafter acquired by each of the Indemnitors, including goods, documents, instruments, general intangibles, accounts, chattel paper, notes receivable, cash, choses in action, policies and proceeds of life, casualty, worker's compensation, liability or other policies of insurance and proceeds of collateral.

   H.   The term "Surety" shall mean Nationwide Mutual Insurance Company, any of its present or future direct or indirect parent companies, any of the respective present or future direct or indirect affiliates or subsidiaries of such companies and parent companies, and/or any of the afore- mentioned entities' successors or assigns, and/or any co-sureties, reinsurers or any other person or entity underwriting any Bond at Surety's request.

II. **APPLICATION**

This is a continuing Agreement that remains, unless canceled in accordance with the provisions hereof, in full force and effect as to all Indemnitors with respect to each and every Bond issued hereunder. This Agreement applies to any Bond executed prior to, contemporaneously with, or after the execution of this Agreement. Surety's acceptance, whether before, simultaneously with or after the execution of this Agreement, of the request, written or otherwise, from a representative who is believed by Surety to be an authorized agent of one or more of the Indemnitors shall in each instance bring within the provisions of this Agreement any Bond executed by or procured by Surety to such request and the liability of the Indemnitors hereunder shall not be affected by the failure of any Indemnitor signing such request or Bond as a principal, indemnitor or otherwise. The obligations of the Indemnitors under this Agreement are joint and several.

This Agreement applies to Bonds, undertaking or other writing obligatory in nature of a bond written by or at the request of the Surety, as surety, co-surety, or reinsurer on behalf of the undersigned Principal, Indemnitors, or any of the them, and any and all of their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, proprietorships, division or affiliates, partnerships, joint venture or co-ventures in which any of the undersigned Principal and/or Indemnitors, their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, proprietorships, division or affiliates, have any interest or participation whether open or silent, jointly, severally, or in any combination with each other, now in existence or which may hereafter be created or acquired.

III. **PREMIUMS**

The Indemnitors are obligated to pay Surety at 1100 Locust Street, Department 2006, Des Moines, IA 50391 (the "Home Office") in advance, the premiums or charges of Surety for each Bond or other instrument issued hereunder, and shall, where the premium or charge is annual, continue to pay same, until Indemnitors have delivered to Surety written evidence satisfactory to the Surety of its final discharge or release from all liability on the Bond and in connection with all matters related thereto. All premium is fully earned upon issuance of any Bond and is not refundable. If for any reason the price of any Contract is increased, or additional work is performed under the Contract for an additional charge, the Indemnitors will pay Surety additional premium at the rates then in effect until Surety has received written evidence satisfactory to Surety of its final discharge or release from all liability on the Bond and in connection with all matters related thereto. Any increase in the price of any Contract and any increase in the amount of any Bond, whether or not notice thereof is given to Indemnitors, shall not operate to discharge the obligations of Indemnitors hereunder to Surety.

IV. **INDEMNIFICATION AND HOLD HARMLESS**

The Indemnitors hereby jointly and severally covenant, promise and agree to exonerate, indemnify and save harmless Surety from and against any and all Loss, irrespective of whether Surety has made any payment under any of its Bonds. Surety shall be entitled to immediate reimbursement for any and all Loss incurred by it in good faith and under the belief that it was liable for the sums and amounts so disbursed, or that it was expedient to make such payments. Indemnitors shall be obligated to indemnify and reimburse Surety for all Loss, irrespective of the fact that Indemnitors may have assumed, or offered to assume, the defense of Surety upon any claim. An itemized, sworn statement of Loss by an employee of Surety, or other evidence of payment, shall be *prima facie* evidence of the propriety, amount and existence of Indemnitors' liability. Indemnitors shall pay to Surety interest on all disbursements made by Surety at the maximum rate permitted by law, calculated from the date of each such disbursement.

V. **COLLATERAL SECURITY**

Upon Surety's demand, the Indemnitors shall immediately deposit with Surety funds, as collateral, in an amount Surety deems necessary at the time of said demand to protect Surety from actual or anticipated Loss. Demand may be made, from time to time, and as soon as: (a) any claim is made against Surety in connection with any Bond; or (b) Surety determines that liability exists; or (c) Surety has a reasonable basis to believe that it may incur liability or Loss; or (d) in the event any Indemnitor diverts contract funds relating to any Bond in violation of paragraph XIV. of this Agreement or applicable law; or (e) in the event Surety deems itself insecure, whether or not Surety has made any payment or established any reserve and whether or not it has received notice of, accepted or denied any claim in whole or in part. Surety shall have no duty to invest or pay interest on any such collateral deposit. Said collateral may be used by Surety in its sole discretion at any time without notice to the Indemnitors to accomplish the purposes of this Agreement. In the event Surety accepts collateral other than funds, Surety is authorized, without notice to Indemnitors, to manage, borrow against, sell, pledge, convey or dispose of said collateral by public or private sale and shall not incur any liability to Indemnitors or others for said actions. The Indemnitors shall be entitled to the return of any collateral or collateral proceeds which may remain upon delivery by Indemnitors of satisfactory evidence to Surety, in its sole discretion, that its liability under any and all Bonds has been released and discharged without Loss and Indemnitors have fully complied with this Agreement. The Indemnitors acknowledge and agree that their failure to im-mediately deposit with Surety any sums demanded under this section shall cause irreparable harm to Surety for which it has no adequate remedy

Indemnitor's Initials *MM*    Indemnitor's Initials *JRV*    Indemnitor's Initials _____    Indemnitor's Initials _____    Indemnitor's Initials _____
Indemnitor's Initials *JJ*    Indemnitor's Initials *JRV*    Indemnitor's Initials _____    Indemnitor's Initials _____    Indemnitor's Initials _____

at law. Indemnitors agree and shall stipulate in any legal proceeding that Surety is entitled to injunctive relief for specific performance of said collateral deposit obligation and do hereby expressly waive and relinquish any claims or defenses to the contrary. Indemnitors further agree that any order enforcing this provision of this Agreement shall operate as a judgment, lien and encumbrance on any property owned by the Indemnitors.

### VI. ASSIGNMENT

The Indemnitors do hereby presently assign, transfer, pledge and convey to Surety, subject to the trust herein created and effective as of the date of the Bonds, as additional security to secure the obligations of the Indemnitors, under the Bonds and this Agreement and with respect to any other liability or indebtedness of Indemnitors to Surety whether heretofore or hereafter incurred all, jointly and severally, all Property as herein defined, including without limitation:

A. All monies due or to become due to the Principal or Indemnitors as a result of the Contract(s), including but not limited to, progress payments, advances, deferred payments, retained percentages, causes of action against any other party, payment for extra work and proceeds of any delay or other damage claims;

B. All right, title and interest of the Principal and/or Indemnitors in or growing out of the Contract(s);

C. All right, title and interest of the Principal and/or Indemnitors in and to all supplies, materials, tools, machinery, plant and equipment of every nature and description that may now or hereafter be related to, or in, on or around the work or the work site covered by the Bonds, and materials purchased or ordered for the performance of the Contract, whether in process of construction, in transit to the site, or in storage elsewhere;

D. All right, title and interest of the Principal and/or Indemnitors in and to all subcontracts, let or to be let, in connection with the Contract(s) and all surety Bonds covering such subcontracts; and

E. All actions, causes of action, claims and demands whatsoever which the Principal may have or acquire against any subcontractor, laborer, materialman, or any other person furnishing or agreeing to supply labor, supplies, materials, tools or other equipment in connection with or on account of the Contract(s), and against any surety or sureties of any subcontractor, laborer or materialman.

### VII. DEFAULT

Indemnitors shall be in Default with respect to a Contract and/or this Agreement if any of the following occur, or upon Surety's reasonable anticipation that any one or more of the following may occur. Without waiver of any of its rights hereunder or otherwise, in the event of any default as defined in this paragraph, surety will notify Indemnitor(s) and inquire into the nature and circumstances thereof and consider any response promptly made by Indemnitor before taking further action hereunder:

A. A declaration of Contract default and/or termination by any Obligee;

B. Any demand by an Obligee, other beneficiary and/or payment bond claimant against a Bond;

C. Any abandonment, forfeiture or breach of or refusal or inability to perform any Contract, or any breach of the Bonds;

D. Any failure to perform or comply with of any provision of this Agreement;

E. Any failure, delay, refusal or inability to make payment of a properly due and owing bill or debt in connection with any Contract and/or this Agreement;

F. Any failure, delay, refusal or inability to pay for any labor or materials or other indebtedness when such payment is due;

G. Any failure, delay, refusal or inability to deposit collateral security as required by this Agreement or otherwise;

H. Surety's establishment of a Loss reserve;

I. A dissipation or diversion of assets or Property by an Indemnitor which in the Surety's judgment, in any way impairs the performance of any term or condition of this Agreement or any Contract;

J. Any proceeding which deprives an Indemnitor of the use or interferes with an Indemnitor's use of any supplies, tools, plant, machinery, equipment or materials required for the performance of any Contract;

K. Any Indemnitor's becoming the subject of any proceeding or agreement of bankruptcy, receivership, insolvency, or creditor assignment, or actually becoming insolvent;

L. Any Indemnitor's dying, becoming legally incompetent, being imprisoned, being convicted of a felony, or disappearing and being unable to be located;

M. Any representation furnished to Surety by or on behalf of any Indemnitor that is materially false or misleading when made, including, without limitation, the financial information provided under paragraph XV. of this Agreement;

N. The transfer or transfers by an Indemnitor of more than ten percent (10%) of Indemnitor's assets to another or others without fair consideration based on the fair market value of the assets transferred; and/or

O. Any change in control or existence of any Indemnitor. Change in control means the addition or departure of any person or entity having a ten percent (10%) or greater ownership interest in any Indemnitor.

### VIII. REMEDIES UPON DEFAULT

In the event of a Default (as defined in paragraph VII. of this Agreement), Surety shall have the right, in its sole discretion, and without limitation, to take any or all of the following actions:

A. Take possession of the work under any Contract and, at Indemnitors expense, to complete said Contract, or cause, or consent to, the completion thereof;

Indemnitor's Initials *MM*   Indemnitor's Initials *JRV*   Indemnitor's Initials ____   Indemnitor's Initials ____   Indemnitor's Initials ____
Indemnitor's Initials *TT*   Indemnitor's Initials *JRV*   Indemnitor's Initials ____   Indemnitor's Initials ____   Indemnitor's Initials ____

SNP-G-22 (1-19 NBC)                                Page 3 of 10

B. Immediately take possession of Indemnitors' Property and utilize the Property for the completion of the work under any Contract without liability for any payment or losses arising from such use;

C. To assert, pursue, prosecute, compromise or settle, in whole or in part, and at Indemnitor's expense, all of the rights, actions, causes of action, claims and demands herein assigned. Further Indemnitors hereby authorize the Surety, at the Surety's option and in the Surety's sole discretion, to prosecute said assigned rights in the name of Surety or in that of the Indemnitors and to endorse in the name of the payee, and to collect any check, draft, warrant or other instrument made or issued in payment of any such assigned rights and to disburse the proceeds thereof;

D. Execute in the name of any Indemnitor, any instruments deemed necessary or desirable by Surety to: (i) provide Surety with title to the Property; (ii) take immediate possession of the Property, including but not limited to Contract funds whether earned or unearned; (iii) collect such sums as may be due Indemnitors and to endorse in the name of Indemnitors; and (iv) collect on any negotiable instruments;

E. Require any Obligee to withhold payment of Contract funds unless and until Surety consents to its release;

F. Be subrogated to all the rights, remedies, properties, funds, securities and receivables relating to Indemnitors' Contracts or contracts, and have the right to offset Loss on any Contract or Bond against proceeds, funds or payments, monies and properties that are due or may become due on any Contract or contract;

G. File suit to enforce any or all of the provisions of this Agreement; and/or

H. Immediately exercise the assignments granted herein.

Further, in the event of Default, and upon demand, Indemnitors shall direct that all payments, monies, and properties that are due or may become due on any Contract be made payable to, and/or sent directly to, Surety or Surety's designated agent, and shall issue whatever writing or notices as deemed necessary by Surety to effectuate the default and/or termination of any Contract.

IX. **DISPOSITION OF COLLATERAL**

Surety may pledge, assign, mortgage, transfer, convey, sell or otherwise liquidate or dispose of any Property assigned to it pursuant to this Agreement, or heretofore or hereafter provided or pledged to Surety for any purpose, or which may otherwise be in the possession of Surety, without incurring any liability of whatsoever kind. The sale may be public or private and with or without notice of the time or place thereof. Surety is hereby authorized to settle any of its claims against, or release or compromise any collateral security of any one or more of the Indemnitors severally and such settlement or release of collateral shall not affect the liability of any of the other Indemnitors to Surety nor shall they be discharged in whole or in part by reason of the settlement or release in whole or in part of one or more of the Indemnitors of their obligations hereunder. When all liability of Surety under the Bond(s) or other instrument(s) issued by Surety is terminated, any balance remaining in the possession of Surety after Surety has paid or reimbursed itself for all indebtedness of any Indemnitor under this Agreement or otherwise shall be returned to the Indemnitors. The Surety shall have no obligation to invest, collect interest or dividends, or to provide a return on, the deposit, exercise any right of the Indemnitors, make presentment, demand or protest, or take any action to protect or enforce the collateral. The Indemnitors agree that the Surety shall not be liable for depreciation of the collateral, investment of the collateral, or any failure to perform or not perform any of the aforementioned acts. Further, the Indemnitors agree that the Surety shall not be required to exhaust its recourse against the Principal on any Bond or against any Indemnitor, but the Surety may resort to the collateral without recourse to such parties. The Indemnitors waive any and all defenses against the Surety based upon the taking or release of other indemnity or collateral.

X. **SETTLEMENTS AND COMPROMISES**

Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon any of the Bonds unless the Indemnitors shall request Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with Surety, at the time of such request, and at other times as thereafter requested by Surety, cash or collateral satisfactory to Surety in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of Surety, and to the extent Surety determines in its sole discretion that such litigation, defense, or appeal is not otherwise prohibited by law or contrary to its obligations under any Bonds. Surety's decision to adjust, settle or compromise any claim, demand, suit or judgment shall be final and binding upon the Indemnitors. Surety shall be entitled to apply any collateral security held by it under this Agreement or any collateral security agreement between it and any of the Indemnitors to the satisfaction of or in reimbursement of Surety as a result of its satisfaction of any claim, demand, suit or judgment upon any of the Bonds procured or executed by it and to the direct payment of or reimbursement to itself of any Loss. Surety shall at all times have the right, but not the obligation, to retain the counsel and experts of its choice to defend itself from any claim, lien, levy, liability, suit or judgment brought against Surety on any Bond or against any Contract funds or collateral security held by Surety or an Obligee on any Bond, including any retainage or to prosecute an action to preserve Surety's rights with respect to collateral security, Contract funds, trust funds or liens on any bonded project and the cost of retaining such counsel and experts shall fall within the Indemnitors' obligation to indemnify, exonerate and hold Surety harmless.

XI. **INVALIDITY OR RELEASE AS TO ONE OR MORE INDEMNITORS**

If for any reason this Agreement is invalid as to any Indemnitor or if any Indemnitor's obligations or liability under this Agreement is terminated in the manner herein provided or otherwise by operation of law or by settlement between the Surety and any such Indemnitor or if any Indemnitor shall fail to execute this Agreement or if any Indemnitor shall become insolvent or if any Indemnitor shall fail to be bound hereby for any reason, the remaining Indemnitors shall nevertheless be bound hereunder, for the full amount of Loss which Surety may sustain or incur.

XII. **WAIVER OF NOTICE; CHANGES**

Indemnitors waive notice of:

A. The execution of any Bond or any Modification thereof;

B. Any Default or any other event that may give rise to or increase liability under any Bond or under this Agreement;

C. Any settlement or compromise between Surety and another Indemnitor;

Indemnitor's Initials _MM_  Indemnitor's Initials _JRV_  Indemnitor's Initials _____  Indemnitor's Initials _____  Indemnitor's Initials _____
Indemnitor's Initials _TT_  Indemnitor's Initials _JRV_  Indemnitor's Initials _____  Indemnitor's Initials _____  Indemnitor's Initials _____

SNP-G-22 (1-19 NBC)                              Page 4 of 10

D. The making of a claim against Surety;

E. Surety's loaning of funds to any Principal;

F. Any disposition or compromise of collateral; and

G. Any payment or settlement of a claim against a Bond.

The Surety in its sole discretion is authorized and empowered without notice to or knowledge of the Indemnitors, notice being hereby expressly waived, to cancel any Bonds, to assent, or to refuse to assent, to any change or modification whatsoever in such Bond and/or Contracts and/or in the general conditions, plans or specifications which accompany said Contracts, including, but not limited to, any change in the time for completion of said Contracts and to payments or advances thereunder before the same may be due, and to assent, or refuse to assent, to or take any assignment or assignments, and to execute, or consent to the execution of, any continuation, extension or renewal of the Bond and to execute any substitutes therefor, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties all without notice to or knowledge of the Indemnitors; it being expressly understood and agreed that the Indemnitors shall remain bound under the terms of this Agreement even though any such assent or refusal to assent by the Surety does or might substantially increase the liability of the Indemnitors; and that the Indemnitors shall be liable to the Surety pursuant to this Agreement on account of any such altered, changed, modified, amended, limited, renewed, substituted, or extended Bond even if the change substantially increases the Indemnitors' liability. The Indemnitors hereby waive notice of the execution, renewal or cancellation of any Bond and of any act, fact or information concerning or affecting the rights or liabilities of the Surety or the rights or liabilities of the Indemnitors.

XIII. **TRUST FUNDS**

All payments received for or on account of any Contract(s) shall be held in a trust fund to assure the payment of obligations incurred or to be incurred in the performance of any Contract(s) and for labor, materials, and services furnished in the prosecution of the work under any Contract(s) or any extensions or modifications thereto. All monies due and to become due under any Contract(s) are also trust funds, whether in the possession of Principal(s), Indemnitor(s) or otherwise, and the Indemnitors agree that they are fiduciaries of such trust fund. The trust funds shall be for the benefit and payment of all obligations for which Surety may be liable under any Bond(s). The trust funds shall inure to the benefit of Surety for any liability or loss it may have or sustain under any Bond(s), and this Agreement and declaration constitute notice of such trust. The trust funds, unless otherwise restricted or regulated by state or local laws, can be commingled with other funds, but the trust funds nature and purpose as stated in this paragraph shall not be modified nor waived by this commingling provision.

Upon demand by Surety, the Indemnitors shall implement the trust or trusts provided for by this paragraph of this Agreement by the creation of an account or accounts with a bank or similar depository or Surety's attorney's escrow account, or otherwise, as designated by Surety, and such account shall be controlled by an escrow agent or other party to be designated by Surety, which account or accounts shall be designated as a trust account or accounts for the deposit of such trust funds, and shall deposit there all monies received for or on account of any Contract(s). With-drawals from such accounts shall be by check or similar instrument signed by a representative of Surety. Said trust shall terminate on the payment of all the obligations under the Contract(s) for which the account was created.

XIV. **COVENANT NOT TO ASSIGN BONDED CONTRACT PROCEEDS**

Indemnitors warrant that, with respect to any contract for which Surety has or may issue a Bond, undertaking or instrument, the Indemnitors have not and shall not assign, its rights to receive payments from such contract to any other person or entity without the express written consent of Surety. Indemnitors agree that any consent by Surety to such assignment shall not operate to discharge, diminish or lessen their obligations to Surety hereunder with respect to such contract. Indemnitors agree and acknowledge that if one or more of the Indemnitors assigned or does assign its right to receive payments to a third party, without Surety's written consent, the Indemnitors shall upon Surety's demand, procure the discharge of Surety from the Bond of such assigned contract or the Indemnitors shall immediately deposit with Surety cash collateral equal to the penal sum of the Bond issued on such contract; if the Indemnitors do not procure the discharge of Surety or they do not deposit the requisite collateral with Surety, Surety may, in addition to any other remedy available, obtain a judgment against the Indemnitors for the penal sum of the Bond plus costs of suit and attorneys' fees. Nothing in this paragraph shall be construed as an agreement by Surety to subordinate its priority rights under this Agreement, at law or in equity, to receive payments from any Contract.

XV. **BOOKS, RECORDS & CREDIT REPORTS**

Indemnitors warrant and represent that any financial information furnished by any Indemnitor to Surety is true and accurate and acknowledge that Surety has and will continue to rely upon such information in executing any Bond. Indemnitors shall have a continuing obligation to provide current financial information to Surety until such time as all obligations of the Indemnitors hereunder have been discharged. Surety, at any time, shall have continuous and uninterrupted access to the books, records, accounts and non-consumer and consumer credit reports of the Indemnitors and to all matters and information concerning any Bond(s) or instrument(s) executed by Surety and the financial condition, credit worthiness and assets of any Indemnitor until the liability of Surety under each and every Bond or other instrument executed by it and each and every obligation of the Indemnitors under this Agreement is terminated and discharged to the satisfaction of Surety. Banks, depositories, consumer credit reporting agencies, material-men, supply houses, obligees on the Bonds and all other persons and organizations are hereby authorized to furnish Surety, at its request, any information (including copies thereof) requested including, but not limited to, consumer credit reports of any individual Indemnitor, the status of work under contracts being performed by an Indemnitor, the condition of the performance of such contracts and payments of such accounts. Regarding consumer credit reports, each Indemnitor agrees that a photocopy of this Agreement shall constitute a written request of the Indemnitor which the Surety may present to a Consumer Credit Reporting Agency as proof of Surety's authority to obtain a Consumer Report as defined under the Fair Credit Reporting Act.

XVI. **SURETY'S RIGHT TO DECLINE EXECUTION OR SEEK RELEASE FROM BONDS**

Surety may decline to execute any bond for which request is made without incurring any liability to and without affecting the obligations of the Indemnitors with respect to any other Bond issued hereunder. Notwithstanding that Surety may have executed a bid or proposal Bond in

Indemnitor's Initials _MM_ Indemnitor's Initials _JRV_ Indemnitor's Initials _____ Indemnitor's Initials _____ Indemnitor's Initials _____

Indemnitor's Initials _JJ_ Indemnitor's Initials _JRV_ Indemnitor's Initials _____ Indemnitor's Initials _____ Indemnitor's Initials _____

connection with any proposed contract, Surety shall have the right to decline to execute any performance, payment or other bond that may have been required in connection with the award of such contract without incurring any liability to the Indemnitors and without affecting the obligations of the Indemnitors with respect to the bid or proposal Bond. The Indemnitors agree that they shall make no claim against Surety for declining to execute any bond. Surety's declination of any bond request shall not affect the obligations of the Indemnitors with respect to any other Bond. The Surety may, at Indemnitor's expense, take any action it deems necessary to obtain release from liability under any or all Bonds, and the under- signed will, upon request from Surety, assist Surety in obtaining release from any Bonds.

## XVII. TERMINATION OF INDEMNITY ON FUTURE BONDS

Any Indemnitor, other than an Indemnitor designated as a principal on a Bond, shall have the right at any time to request cancellation of this Agreement as to such Indemnitor by delivering written notice, by certified or registered mail, of such request to Surety at its Home Office and to the attention of Surety's Surety Department. Such cancellation shall not become effective until the earlier of thirty (30) days after Surety's actual receipt of such notice or the date of written acceptance thereof by Surety. Such cancellation shall not relieve such Indemnitor from liability hereunder or for any Bond or other instrument executed by Surety prior to the date of such cancellation and any Modifications thereof, or with respect to Bonds executed after the dated of such termination (i) upon award of a contract to the Principal on a bid or proposal with respect to which the Surety has executed a bid or proposal bond or similar undertaking prior to such date, or (ii) which the Surety has become obligated, prior to such date, to execute. Such cancellation shall not affect any obligations or liability of any Indemnitors who do not request cancellation.

## XVIII. REQUIRED NOTICE TO SURETY

The Indemnitors shall immediately notify Surety, via written notification sent to Home Office, of any:

A. Facts which might give rise to any claim, demand, suit, action or proceeding against Surety upon any Bond;

B. Claim, demand, suit, action or proceeding growing out of or relating to any Bond or other instrument executed by Surety on behalf of the Indemnitors or any one of them;

C. Notice or knowledge Indemnitors receive that the liability insurance of an Indemnitor named as a principal in a Bond has been or will be canceled, terminated or non-renewed for any reason or that such coverage will be reduced;

D. Any material change in the financial condition of any Indemnitor;

E. Filing by an Indemnitor of an assignment of most or all of the Indemnitor's property and/or assets which the surety has a security interest in hereunder or by operation of law for the benefit of any creditors;

F. Filing of a petition in bankruptcy under the federal bankruptcy act either by or against any Indemnitor; or

G. Any levy by the Internal Revenue Service or other creditor on Trust Funds, whether such funds are held by an Obligee or an Indemnitor.

## XIX. ATTORNEY-IN-FACT

The Indemnitors hereby irrevocably nominate, constitute, appoint and designate Surety or its designee as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the Indemnitors assigned, transferred and conveyed to Surety in this Agreement, and in the name of any Indemnitor, to make, execute or endorse and deliver any and all additional or other assignments, vouchers, financing statements, mort-gages, re-leases, satisfactions, checks, drafts, notes, certificates of deposit, letters of credit, deeds, bills of sale, authorizations (including an autho-rization on behalf of the principal or any Indemnitor to release information), documents or papers, including any agreement under §49.404(e)(4) of the Federal Acquisition Regulation or any direction or authorization under 48 Code of Federal Regulations §28.106-7, deemed necessary and proper by Surety in order to give full effect not only of the intent and meaning of the within assignments, but also to the full protection intended to be given herein to Surety under all other provisions of this Agreement, the Bond(s) or otherwise. This power of attorney is irrevocable and is coupled with an interest and shall survive the subsequent disability or legal incapacity of any or all of the Indemnitors. The Indemnitors hereby ratify and affirm all acts and actions taken and done by Surety as such attorney-in-fact. The Indemnitors waive any and all claims they had, now have or may ever in the future have against Surety as a result of its having taken any action or done anything as such attorney-in-fact or otherwise under this Agreement. The Surety shall have the right as such attorney-in-fact to assert, pursue, prosecute, compromise or settle, in whole or in part, and at the Indemnitors' expense, all of the rights, actions, causes of action, claims, and demands assigned hereunder.

## XX. SECURITY INTEREST

As security for the performance of all of the provisions of this Agreement, Indemnitors hereby assign, transfer, pledge, convey and grant to Surety a security interest in all Property and the following properties, assets and rights of Indemnitors, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof: all goods (including inventory, machinery, equipment, tools, materials, supplies and any accessions thereto), instruments (including promissory notes), documents, accounts, chattel paper, deposit accounts, letter-of-credit rights, securities and all other investment property, supporting obligations, any Contract or contract rights, whether bonded or non-bonded, or rights to the payment of money, insurance claims and proceeds, and all general intangibles. This Agreement shall for all purposes constitute a Security Agreement for the benefit of Surety in accordance with the Uniform Commercial Code ("UCC") and all similar statutes. Indemnitors hereby irrevocably authorize Surety, without notice to any Indemnitor, to perfect the security interest granted herein, by filing this Agreement or a copy or other reproduction of this Agreement. Surety may add schedules or other documents to this Agreement as necessary to perfect its rights. The failure to file or record this Agreement or any financing statement shall not release or excuse any of the obligations of Indemnitors under this Agreement. The Surety's exercise of any of its rights as a secured creditor under this Agreement shall not be a waiver of any of Surety's legal or equitable rights or remedies, including Surety's right of subrogation.

## XXI. RISK OF BOND TERMS

Each Indemnitor acknowledges that the Surety has no duty, express or implied, to review any Contract, Bond or other form of document by or on behalf of any Indemnitor and that the Surety's execution of any Bond is not to be construed as a representation of any kind, explicit or implied, as to the reasonableness of the terms and conditions contained therein or within any contract referenced in such Bond, the risks of which are, first and foremost, the responsibility of the Indemnitors requesting the execution of such Bond.

Indemnitor's Initials _MM_ Indemnitor's Initials _JRV_ Indemnitor's Initials _____ Indemnitor's Initials _____ Indemnitor's Initials _____

Indemnitor's Initials _TT_ Indemnitor's Initials _JRV_ Indemnitor's Initials _____ Indemnitor's Initials _____ Indemnitor's Initials _____

XXII. **CUMULATIVE RIGHTS; SURETY'S RIGHTS**

Surety's rights under this Agreement are cumulative with, and in addition to, all other rights of Surety, however derived. Surety is not required to exhaust its rights or remedies against any Indemnitor or to await receipt of any final dividends from the estate or legal representative of any Indemnitor or the receipt of proceeds from any assignment herein granted before asserting its rights hereunder or commencing any action or proceeding against any other Indemnitor. Surety shall have every right, defense, or remedy which a personal surety without compensation would have, including the remedies of exoneration and quia timet relief.

XXIII. **INDEMNITORS DUTY TO COOPERATE**

The Indemnitors shall give the Surety prompt notice of any claim, demand, suit, arbitration proceeding or other action that purports to be instituted in any Bond or of any levy by the Internal Revenue Service or any other creditor on Trust Funds, whether such funds are held by an oblige or an Indemnitor and shall fully cooperate with the Surety in the defense thereof.

XXIV. **LIBERAL CONSTRUCTION**

This Agreement shall be liberally construed so as to protect and indemnify Surety and any company that Surety may procure to execute any Bond or that may join with Surety as co-surety or be or become reinsurer on any Bond, any of whom shall, after obtaining the written consent of the Surety, be deemed to have a direct right of action under this Agreement against the Indemnitors.

XXV. **INVALIDITY OF PROVISIONS; SEVERABILITY**

If any provision of this Agreement is deemed void or unenforceable under any law governing its construction or enforcement, this Agreement shall not be voided or terminated thereby, but shall be enforced with the same effect as though such provision were omitted.

XXVI. **SUITS AND PROCEEDINGS**

Separate suits or proceedings may be brought by Surety on this Agreement as causes of action accrue. Any suit or other proceeding brought by Surety or the recovery of judgment upon any cause of action by Surety shall not prejudice or bar any other suit or proceeding by Surety upon another cause of action, whether theretofore or thereafter arising. The Indemnitors submit to the jurisdiction of the state and federal courts situated in New York, waiving any defenses of lack of personal jurisdiction and waiving venue arguments, including forum non conveniens, in any action brought by Surety in the State of New York. Surety reserves the right to bring an action in any state where an Indemnitor has substantial contacts or where a project covered by a Bond subject to this Agreement is located or where a claimant brings suit against Surety on a Bond covered by this Agreement and Indemnitors agree to submit to the jurisdiction of the courts in such state. To the full extent permitted by law, the Indemnitors waive the right to interpose any defense, including any set-off or counterclaim of any nature or description in any action pursued by Surety for enforcement of this Agreement or any Contract. Further, in any action by Surety against the Indemnitors, or any of them, each agrees that service of process may be made on any one of them and will be effective as to all of the Indemnitors.

XVII. **WAIVER OF TRIAL BY JURY**

The indemnitors and the Surety each hereby waive trial by jury in any action or proceeding to which any or all of the indemnitors and the Surety may be parties, arising out of or in any way pertaining to this agreement. It is agreed and understood that this waiver constitutes a waiver of trial by jury of all claims against all parties to such actions or proceedings, including any claim against any party who is not a party to this agreement. This waiver is knowingly, willingly and voluntarily made by the indemnitors, and the Surety and the indemnitors and the Surety each represent and warrant that no representation of fact or opinion has been made by any individual to induce this waiver of trial by jury or to in any way modify or nullify its effect.

VIII. **CHOICE OF LAW**

This Agreement shall be governed by the laws of the State of New York.

XIX. **CONTRIBUTION**

Each Indemnitor assigns to Surety its claims against every other Indemnitor for contribution, subrogation or indemnification.

XX. **INDEMNITORS TO OBTAIN RELEASE OF SURETY**

The Indemnitors will, at the request of the Surety and at Indemnitor's expense, procure the discharge of the Surety from any Bond and all liability by reason thereof.

XXI. **INDEMNITORS' RIGHT TO CONSULT COUNSEL**

Indemnitors represent and warrant that each of them has carefully read and understands this Agreement and has had or waived the opportunity to confer with counsel concerning it.

XII. **HOW TO MAKE CHANGES TO THIS AGREEMENT**

By signing this Agreement, the Indemnitors agree to be bound by all terms and conditions as set out in the original typeset, it being understood that additions, alterations and strikethroughs are void and of no effect and do not constitute an offer or counteroffer. The Indemnitors acknowledge and agree that the only way to change any term of this Agreement as typeset is by an addendum that is countersigned by an officer of the Surety. Indemnitors understand that this Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed by Surety to form a part hereof. DO NOT SIGN THIS AGREEMENT UNLESS YOU INTEND TO BE BOUND BY ITS TERMS AS SET OUT IN THE ORIGINAL TYPESET OR YOU ARE IN POSSESSION OF AN ADDENDUM SIGNED BY THE SURETY.

Indemnitor's Initials *ML ML* Indemnitor's Initials *JRV* Indemnitor's Initials _____ Indemnitor's Initials _____ Indemnitor's Initials _____
Indemnitor's Initials *JJ* Indemnitor's Initials *JRV* Indemnitor's Initials _____ Indemnitor's Initials _____ Indemnitor's Initials _____

IN WITNESS WHEREOF, we have signed and sealed this Agreement to be effective the 10th day of May 2021.

ATTEST/WITNESS: _[signature]_

Business Indemnitor:

VEI Solutions, Inc. _____ (SEAL)

By: _Tranquilino R Ventura_

Tranquilino R. Ventura
(Name and Title)

Tax ID No.: **[redacted]**

Business Address: 1800 Howard St., Suite A

Elk Grove Village, IL 60007

**BUSINESS ACKNOWLEDGEMENT**

State of Illinois

County of Cook

On this 10th day of May, 2021, personally came before me, Tranquilino R. Ventura _____ who is the President _____ of VEI Solutions, Inc. _____ to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

_[signature]_ (SEAL)

Notary Public

My Commission Expires: 7/22/2024

OFFICIAL SEAL
KYLE BLAIS
Notary Public, State of Illinois
My Commission Expires
July 22, 2024

ATTEST/WITNESS: _____

Business Indemnitor:

DFK Direct Investments, LLC _____ (SEAL)

By: _____

Matthew Muckerheide, Managing Member
(Name and Title)

Tax ID No.: _____

Business Address: _____

**BUSINESS ACKNOWLEDGEMENT**

State of _____

County of _____

On this _____ day of _____, 20___, personally came before me, Matthew Muckerheide _____ who is the Managing Member _____ of DFK Direct Investments, LLC _____ to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

_____ (SEAL)

Notary Public

My Commission Expires: _____

IN WITNESS WHEREOF, we have signed and sealed this Agreement to be effective the <u>10th</u> day of <u>May</u> 20<u>21</u>.

ATTEST/WITNESS:                                   Business Indemnitor:

                                                  VEI Solutions, Inc.
                                                                                (SEAL)

                                                  By: _____

                                                  Tranquilino R. Ventura
                                                  (Name and Title)

Tax ID No.: _____               Business Address: 1800 Howard St., Suite A
                                                  Elk Grove Village, IL  60007

BUSINESS ACKNOWLEDGEMENT

State of _____

County of _____

On this _____ day of _____, 20___, personally came before me, Tranquilino R. Ventura who is the President _____ of VEI Solutions, Inc. to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

                                                  _____ (SEAL)
                                                  Notary Public
                                                  My Commission Expires: _____

ATTEST/WITNESS:                                   Business Indemnitor:

B. Ol                                             DFK Direct Investments, LLC
                                                                                (SEAL)

                                                  By: *Matthew Muckerheide*

                                                  Matthew Muckerheide, Managing Member
                                                  (Name and Title)

Tax ID No.: [REDACTED]                            Business Address: 1720 W Division St. STE 72 Chicago IL 60622

BUSINESS ACKNOWLEDGEMENT

State of ILLINOIS

County of COOK

On this 11th day of MAY, 2021 personally came before me, Matthew Muckerheide who is the Managing Member of DFK Direct Investments, LLC to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

                                                  _____ (SEAL)

OFFICIAL SEAL                                     Notary Public
NICOLE L SIMMONS                                  My Commission Expires: JAN. 6, 2025
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 01/06/2025

ATTEST/WITNESS:      Business Indemnitor:

Decision Tree Resources, Inc.

(SEAL)

By: _____

Todd Taranto, President
(Name and Title)

Tax ID No.: _____    Business Address: _____

## BUSINESS ACKNOWLEDGEMENT

State of _____

County of _____

On this _____ day of _____, 20___, personally came before me, Todd Taranto _____ who is the President _____ of Decision Tree Resources, Inc. _____ to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

_____ (SEAL)
Notary Public
My Commission Expires: _____

WITNESS: *Kyle B[signature]*

Individual Indemnitor:
Signature: *Tranquilino R Ventura [signature]*
Printed Name: Tranquilino R. Ventura
Social Security No.: [REDACTED]
Home Address: 1225 W Morse Ave Apt 406; Chicago, IL 60626

WITNESS: _____

Individual Indemnitor:
Signature: _____
Printed Name: _____
Social Security No.: _____
Home Address: _____

## INDIVIDUAL ACKNOWLEDGEMENT(S)

State of Illinois
County of Cook
On this 10th day of May, 2021, personally came before me, Tranquilino R. Ventura and _____ to me known to be the individual(s) who executed the foregoing instrument and acknowledged that he/she/they executed the same as his/her/their voluntary act and deed.

*Kyle B[signature]*
Notary Public
My Commission Expires: 7/22/2024

[Notary Seal: KYLE BLAIR, OFFICIAL SEAL, Notary Public, State of Illinois, My Commission Expires July 22, 2024]

| | |
|---|---|
| ATTEST/WITNESS:<br>B.D.R. (signature) | Business Indemnitor:<br>Decision Tree Resources, Inc. _____ (SEAL)<br>By: Todd Taranto (signature)<br>Todd Taranto, President<br>(Name and Title) |
| Tax ID No.: [redacted] | Business Address: _____<br>205 N. College Avenue, STE 450<br>Bloomington, IN 47404 |

**BUSINESS ACKNOWLEDGEMENT**

State of __IL__

County of __WILL__

On this __11th__ day of __MAY__, 20__21__, personally came before me, Todd Taranto _____ who is the President _____ of Decision Tree Resources, Inc. _____ to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

Brandie Catlin (signature) _____ (SEAL)
Notary Public
My Commission Expires: __3/31/22__

"OFFICIAL SEAL"
BRANDIE CATLIN
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 03/31/2022

| WITNESS: | Individual Indemnitor: |
|---|---|
| _____ | Signature: _____<br>Printed Name: Tranquilino R. Ventura<br>Social Security No.: _____<br>Home Address: _____ |
| WITNESS: | Individual Indemnitor: |
| _____ | Signature: _____<br>Printed Name: _____<br>Social Security No.: _____<br>Home Address: _____ |

**INDIVIDUAL ACKNOWLEDGEMENT(S)**

State of _____

County of _____

On this _____ day of _____, 20___, personally came before me, Tranquilino R. Ventura _____
and _____ to me known to be the individual(s) who executed the foregoing instrument and acknowledged that he/she/they executed the same as his/her/their voluntary act and deed.

_____ (SEAL)
Notary Public
My Commission Expires: _____

SNP-G-22 (1-19 NBC)                                   Page 9 of 10